UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SHARON PITTS, et al., | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| vs. | ) | Case No. 4:10CV00274 ERW |
| | ) | |
| CITY OF CUBA, et al., | ) | |
| | ) | |
| Defendant(s). | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendants Randy Martin and Jay Coleman's

Motion for Summary Judgment [ECF No. 177].  For the reasons set forth below, their Motion is

granted.

**I.      BACKGROUND**

On February 16, 2010, Plaintiffs Sharon Pitts ("Plaintiff Pitts"), Lisa King ("Plaintiff

King"), Marilyn Copling ("Plaintiff Copling"), and Daniel Pitts, (collectively, "Plaintiffs"),

acting *pro se*, filed a complaint against twenty-two individuals and eight public entities [ECF No.

1].  Plaintiffs alleged thirteen counts against Defendant Jay Coleman ("Defendant Coleman") and

twelve counts against Defendant Randy Martin ("Defendant Martin").  Pursuant to a Motion to

Dismiss [ECF No. 43], six counts, including three conspiracy claims under 42 U.S.C. § 1985,

against Defendants Martin and Coleman were dismissed for failure to state a claim [ECF No.

87].  Plaintiffs filed an Amended Complaint on January 31, 2011 [ECF No. 89],  setting forth

twenty-four counts of alleged constitutional and civil rights violations.[1]   In their Amended

_____

[1]Daniel Pitts is no longer a party to this action.  He was terminated from the lawsuit on
August 30, 2012.

Complaint, Plaintiffs set forth three claims (under Counts I, II, and III) against Defendants Martin

and Coleman for violation of their rights pursuant to the First, Fourth, Fifth, Eighth, and

Fourteenth Amendments, under 42 U.S.C. § 1983.[2]   On September 24, 2012, Defendants Martin

and Coleman filed a Motion for Summary Judgment [ECF No. 177].  Plaintiffs filed their

Response in Opposition to Defendant Randy Martin and Jay Coleman's Motion for Summary

Judgment ("Response in Opposition") on October 18, 2012 [ECF No. 192].[3]  Defendants filed

their Reply on October 26, 2012 [ECF No. 196].

        In compliance with E.D. Mo. 7 - 4.01(E), Defendants Martin and Coleman filed a

Statement of Uncontroverted Material Facts [ECF No. 179] in support of their Motion for

Summary Judgment.  Plaintiffs' Response in Opposition includes a separate Statement of

Uncontroverted Facts for each Plaintiff.  Plaintiffs do not make reference to the facts set forth by

Defendants in their Statement of Uncontroverted Material Facts, nor do they note the paragraph

number from the Defendants' listing, as required by this Court's Local Rules.  The Statements of

Uncontroverted Facts submitted by Plaintiffs contain many factual assertions that are wholly

irrelevant for purposes of evaluating Defendants' Motion.  Because Plaintiffs fail to controvert

the matters set forth by Defendants in their Statement of Uncontroverted Material Facts, the

assertions are deemed admitted.[4]  *See Jones v. United Parcel Serv., Inc.* 461 F.3d 982, 991 (8th

---

[2]In the Amended Complaint, Plaintiffs drop Counts XXI, XXII, XXIII against both
Defendants Martin and Coleman, and Count XXXI against Defendant Coleman.

[3]In their Response in Opposition, Plaintiffs assert claims against Defendants Martin and
Coleman under Counts XI, XII, XV, XVI, XIX, and XX.  Upon review of the Amended
Complaint, this assertion is erroneous as these counts do not set forth allegations against
Defendants Martin and Coleman.  As such, they will be disregarded.

[4]All matters set forth in the statement of the movant shall be deemed admitted for
purposes of summary judgment unless specifically controverted by the opposing party.  E.D.
Mo. 7 - 4.01(E).

Cir. 2006) (concluding that the district court did not abuse its discretion in deeming defendants'

statements admitted, as plaintiffs' statement of controverted facts and response to defendants'

uncontroverted facts violated local rules).

The following facts are those deemed admitted as Plaintiffs failed to controvert them.[5]

An altercation occurred on February 28, 2008, between Plaintiffs Pitts and King and their father,

Leroy Copling.  Plaintiffs allege they were assaulted by their father.  As a result of the

altercation, a report was made to the City of Cuba police on behalf of  Leroy Copling, stating that

he was assaulted/abused by his daughters, Plaintiffs Pitts and King.[6]  Charges of adult abuse were

filed against Plaintiffs Pitts and King.  Warrants were issued by the Crawford County Circuit

Court for the arrest of Pitts and King for elder abuse on March 7, 2008.

On March 7, 2008, then Sargent (now Chief) Defendant Paul Crow, of the Cuba,

Missouri Police Department placed Lisa King under arrest pursuant to the outstanding warrant

for elder abuse.  Prior to executing the arrest warrant, Defendant Crow verified that the warrant

was active and valid.  The arrest occurred at the residence of Plaintiffs Pitts and King's parents,

Leroy and Marilyn Copling.  Defendant Jay Coleman, a Deputy of the Crawford County Sheriff's

Department, was present for the arrest of Lisa King as back-up.  Deputy Coleman did not place

Plaintiff Lisa King under arrest, nor did he touch Plaintiff Marilyn Copling during the arrest of

---

[5]The facts contained in this section are the same facts set forth in Defendants' Statement of Uncontroverted Material Facts [ECF No. 179].  The Statement of Uncontroverted Material Facts contains citations to the record, in support of each fact, which are not repeated here.

[6]In Defendants Statement of Uncontroverted Material Facts [ECF No. 179, ¶ 2], they allege that Leroy Copling was assaulted/abused by Sharon Pitts and *Leroy Copling*.  This appears to be an error, and their Memorandum in Support of their Motion for Summary Judgment [ECF No. 178] identifies Lisa King instead of Leroy Copling as the party assaulting Leroy Copling.

Lisa King. He did not threaten or display inappropriate behavior towards Plaintiff Marilyn Copling.

On March 7, 2008, Defendant Rhonda Shanika, a Trooper with the Missouri State Highway Patrol, placed Sharon Pitts under arrest pursuant to the outstanding warrant for elder abuse. Prior to executing the warrant, Defendant Shanika verified that the warrant was active and valid. Deputy Coleman was present for the arrest of Sharon Pitts as back-up. He did not place Sharon Pitts under arrest.

All deputies and officers of the Crawford County Sheriff's Department have graduated from a POST accredited law enforcement academy with at least 470 hours of basic training, and are POST certified by the Missouri Department of Public Safety. All deputies and officers of the Crawford County Sheriff's Department complete at least 48 hours of continuing education every three years and maintain their POST certification. Defendant Coleman is POST (Peace Officer Standards in Training) certified by the Missouri Department of Public Safety. He has completed at least 48 hours of continuing education every three years since 1998, and has over 50 hours of training in arrest techniques and serving arrest warrants.

Based upon complaints made by Lisa King and Sharon Pitts, on July 25, 2011, Defendant Martin wrote to the Crawford County Prosecuting Attorney, William Seay, asking Mr. Seay to direct a request for an investigation of alleged corruption on the part of the Crawford County Sheriff's Department and the City of Cuba Police Department to the DDCC (Division of Drug and Crime Control of the Missouri State Highway Patrol).

## II.    LEGAL STANDARD

As an initial matter, the Court notes that plaintiff is a *pro se* litigant, and as such, her pleadings are held "to less stringent standards than formal pleadings drafted by lawyers." *Ellis v.*

*Butler,* 890 F.2d 1001, 1003 (8th Cir. 1989) (quoting *Haines v. Kerner,* 404 U.S. 519, 520

(1972)).  Nevertheless, plaintiff must comply with substantive and procedural law.  *See Am.*

*Inmate Paralegal Ass'n v. Cline,* 859 F.2d 59, 61 (8th Cir. 1988)**.**

A court shall grant a motion for summary judgment only if the evidence, viewed in the

light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law.  *Lynn v.*

*Deaconess Medical Center,* 160 F.3d 484, 486 (8th Cir. 1998) (citing Fed. R. Civ. P. 56(c)).

Material facts are those "that might affect the outcome of the suit under the governing law," and

a genuine dispute is one "such that a reasonable jury could return a verdict for the nonmoving

party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  There is no genuine issue as

to any material fact if the nonmoving party has failed to "make a showing sufficient to establish

the existence of an element essential to that party's case...."  *Celotex Corp. v. Catrett,* 477 U.S.

317, 322 (1986).

The party seeking summary judgment bears the initial responsibility of informing the

court of the basis of its motion and identifying those portions of the affidavits, pleadings,

depositions, answers to interrogatories, and admissions on file which it believes demonstrates the

absence of a genuine issue of material fact.  *Celotex,* 477 U.S. at 323.  When such a motion is

made and supported by the movant, the nonmoving party may not rest on her pleadings but must

produce sufficient evidence to support the existence of the essential elements of her case on

which she bears the burden of proof.  *Id.* at 324.  In resisting a properly supported motion for

summary judgment, the plaintiff has an affirmative burden to designate specific facts creating a

triable controversy.  *Crossley v. Georgia-Pacific Corp.,* 355 F.3d 1112, 1113 (8th Cir. 2004).

The non-moving party must "substantiate [their] allegations with sufficient probative evidence

that would permit a finding in [their] favor based on more than mere speculation, conjecture, or fantasy." *Wilson v. Int'l. Bus. Mach. Corp.,* 62 F.3d 237, 241 (8th Cir. 1995).

Further, the Court notes that it is "not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *White v. McDonnell Douglas Corp.,* 904 F.2d 456, 458 (8th Cir. 1990) (quoting *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989)).

## III.    DISCUSSION

The three Counts alleged against both Defendant Martin and Defendant Coleman are:

1. Count I: Retaliation for exercising free speech rights (42 U.S.C. § 1983 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Pitts;

2. Count II: Retaliation for exercising free speech rights (42 U .S.C. § 1983 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff King; and

3. Count III: Retaliation for exercising free speech rights (42 U.S.C. § 1983 and 1st, 4th, 14th Amendments), asserted by Plaintiff M. Copling.[7]

Based on the Amended Complaint [ECF No. 89, ¶¶ 246-254], these Counts appear to allege a First Amendment retaliation claim under 42 U.S.C. § 1983.  In addition, the Counts claim violations of the Plaintiffs' 4th, 5th, 8th, and 14th Amendments, as well as stating that Plaintiffs' rights were violated by  "treating similarly situated citizens more favorably"  *Id.* at ¶¶ 247, 250, 253.  Also, although not separately acknowledged in a particular count, Plaintiffs make

---

[7]Plaintiffs did not list the 5th Amendment in Count III, as they did in Counts I and II. Whether this was done in error or not, need not be considered as Plaintiffs have conceded the 5th Amendment does not apply to these counts.

allegations in the "Facts" section preceding the counts, that Defendant Martin failed to train, supervise, or protect Plaintiffs.  *Id.* at ¶ 233.

Plaintiffs concede in their Response in Opposition, that the Fifth and Eighth Amendments do not apply to their § 1983 claims [ECF No. 192, ¶ 8].   As such, only allegations of the violation of Plaintiffs' 1st, 4th, and 14th amendment rights by both Defendants, as well as claims of inadequate supervision, failure to train, and failure to protect by Defendant Martin will be discussed.  Furthermore, Plaintiffs' § 1983 claims will be considered against Defendants Martin and Coleman in both their individual and official capacities, as the "Introduction" of the Amended Complaint indicates Plaintiffs' intent to sue Defendants under both theories [ECF No. 89, ¶ 1].

As noted, Plaintiffs allege that their Constitutional rights were violated, however, they do not support this broad assertion by offering how the conduct of Defendants transgressed a particular right.  In the Amended Complaint, Counts I, II, and III alone do not offer any factual support of the allegations, but, instead, incorporate by reference a lengthy factual narrative consisting of the 245 preceding paragraphs.  Additionally, in their Response in Opposition, Plaintiffs do not respond to Defendants' legal arguments, nor do they support the elements of their claims by citing to specific facts in the record.  Instead, Plaintiffs recite the elements of § 1983, claim the elements have been met, giving rise to a genuine issue of material fact, and then cite to every exhibit attached to their Response in Opposition [ECF No.192-5, Exhibits A-Y]. On a motion for summary judgment, Plaintiffs are required to "point to specific facts in the record that create a genuine issue for trial" *Anderson,* 477 U.S. at 256.  However, this Court will consider Plaintiffs' *pro se* status in construing their Amended Complaint, Response in Opposition, Statement of Uncontroverted Facts, and Exhibits to determine if there are adequate

facts alleged to provide a genuine issue of material fact, taking into consideration those facts that have been *deemed admitted*. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed").

### A.      Claims Against Defendants Martin and Coleman in Their Individual Capacity

In their Amended Complaint,  Plaintiff allege actions by Defendant Coleman revolving around the March 7, 2008 arrests of Plaintiffs Pitts and King.  Plaintiffs claim that King, arrested by Defendant Paul Crow, was not told the reason for her arrest, although Plaintiff Copling asked Defendant Paul Crow why Plaintiff King was being arrested [ECF No. 89, ¶ 58].  Plaintiffs also allege that Defendant Coleman's behavior caused Plaintiff King to fear for Plaintiff Copling's well-being.  *Id.* at ¶ 62.  In their Statements of Uncontroverted Facts [ECF Nos. 192-2, 192-3], Plaintiffs refer to deposition testimony (taken by Defendants) that Defendant Coleman lunged at Plaintiff Copling, but did not touch her.[8]   As to the arrest of Plaintiff Pitts, Plaintiffs state that Defendant Coleman and other Defendants went to Plaintiff Pitts' house, forced their way in, drew a gun on her husband, threatened him with bodily harm, demanded to speak to her, and then arrested her, without revealing the reason for her arrest, and without letting her take her diabetes medication [ECF No. 89, ¶ ¶ 66, 68-76].

---

[8]Regardless of allegations made by Plaintiffs of a lunge, Defendants' Statement of Uncontroverted Material Facts notes that "Deputy Coleman did not threaten or display inappropriate behavior toward Plaintiff Marilyn Copling." [ECF No. 179, ¶ 9].  This statement is supported by sworn affidavits from Defendant Coleman and arrresting officer, Paul Crow [ECF Nos. 179-6, 179-8].  As this statement is deemed admitted, there is no genuine issue of material fact with regard to Defendant Coleman's behavior toward Plaintiff Copling.  Furthermore, while Plaintiffs King and Copling offer (as exhibits) voluntary statements, allegedly made on Cuba Police Department forms, recounting a lunge, these statements are not authenticated in any way [ECF No. 192-5, Exhibits I, J].

The only specific acts Plaintiffs attribute to Defendant Martin, surround his investigation of a complaint Plaintiff Pitts made against an officer with the Cuba Police Department, Defendant Tim Bailey. Plaintiffs claim that Pitts made a voluntary statement with the Crawford County Sheriff Department regarding a February 4, 2008 incident with Defendant Bailey. *Id.* at ¶ 124. Several days after allegedly filing the statement, Plaintiffs claim Defendant Coleman stated to them that Sheriff Martin determined it would be a conflict of interest to investigate, and had forwarded the complaint to the Crawford County prosecutor. *Id.* at ¶ 125.

Defendants argue that, based on the undisputed material facts, the affirmative defense of qualified immunity shields Defendants Martin and Coleman from liability under § 1983 in their individual capacities. Under the doctrine of qualified immunity, officials performing discretionary functions should be shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Likewise, in the Eighth Circuit, a determination of whether an official is entitled to qualified immunity in a civil rights action requires an examination of whether his or her conduct violated a constitutional right and whether that right was clearly established. *Hutson v. Walker*, 688 F.3d 477, 483 (8th Cir. 2012) (internal citation omitted). For the purposes of qualified immunity analysis, "clearly established" means the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Jones v. McNeese*, 675 F.3d 1158, 1161 (8th Cir. 2012). This inquiry turns on the *objective* legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken. *Pearson v. Callahan*, 555 U.S. 223, 244 (2009) (internal citation omitted).

1. **Plaintiffs' First Amendment Claims Against Defendant Coleman**

Counts I, II, and III specifically allege that Plaintiffs rights were violated as a result of Defendants' retaliation for Plaintiffs exercising their rights to freedom of speech. However, Plaintiffs do not explain the nature of any First Amendment right they sought to exercise, nor how the actions of Defendant Coleman interfered with the exercise of those rights. By the most favorable view of Plaintiffs' recitation of facts, Defendant Coleman's purported retaliation under Counts I and II (relating to Plaintiffs Pitts and King, respectively) appears to arise from his participation in the March 7, 2008 arrests of Pitts and King. Assuming Plaintiffs are alleging a First Amendment retaliatory arrest claim, to show a violation of their rights, Plaintiffs must establish a causal connection between a defendant's retaliatory animus and [plaintiffs'] subsequent injury. *Baribeau v. City of Minneapolis,* 596 F.3d 465, 481 (8th Cir. 2010). Plaintiffs must offer evidence that they were "singled out" because of their exercise of constitutional rights, and that the arrests caused [them] to suffer an injury that would 'chill a person of ordinary firmness' from continuing in the protected activity. *Id.* Futhermore, as Defendants have noted, in the context of a First Amendment retaliatory arrest claim, *lack* of probable cause is a necessary element. *McCabe v. Parker*, 608 F.3d 1068, 1075 (8th Cir. 2010). It is firmly established that "an arrest executed pursuant to a facially valid warrant generally does not give rise to a cause of action under 42 U.S.C. § 1983 against the arresting officer." *Fair v. Fulbright,* 844 F.2d 567, 569 (8th Cir. 1988) (citation omitted). When a plaintiff, in an action brought under 42 U.S.C. § 1983, contends that an officer acted without probable cause, the officer is entitled to qualified immunity unless the "warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *George v. City of St. Louis,* 26 F.3d 55, 57 (8th Cir. 1994). The Supreme Court stated, in *Whiteley v. Warden*, that officers called upon to aid other officers in executing arrest warrants, are entitled to assume that

the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause. 401 U.S. 560, 568 (1971).

Here, Defendants argue that Coleman's role in the arrests of Plaintiffs Pitts and King do not meet the elements of a retaliatory arrest claim. This Court agrees. Defendants maintain Plaintiffs offer no evidence of a retaliatory animus on behalf of Defendant Coleman which led to the arrests. Defendants argue that the arrests did not chill Plaintiffs from engaging in a protected activity. It is undisputed that Plaintiffs filed complaints after the arrests took place.[9] It is further uncontroverted that Coleman did not personally arrest either Plaintiff. Defendants Crow and Shanika arrested King and Pitts, respectively, after verifying that the warrants pertaining to their arrests were active and valid. Even if Plaintiffs had set forth facts that challenged the validity of the warrants, which they did not, Defendant Coleman's reliance upon them is objectively reasonable. Under *Whiteley v. Warden*, Defendant Coleman was entitled to assume that other officers provided information which supported the issuance of warrants based on probable cause. As the arrests of Pitts and King were executed pursuant to facially valid warrants, Plaintiffs cannot establish the lack of probable cause, a necessary element in a retaliatory arrest claim, and therefore, fail to establish the existence of a dispute of a material fact to support an underlying constitutional violation in the arrests.

Defendants also argue that Defendant Coleman is entitled to qualified immunity. As just discussed, there is no underlying constitutional violation by Defendant Coleman based on a retaliatory arrest claim. Even if a violation could have been established, Plaintiffs would have to

---

[9]Plaintiffs themselves offer, as exhibits, unsworn voluntary statements allegedly filed with the Cuba Police Department regarding their March 7, 2008 arrests, as well as a complaint allegedly filed in July, 2011, with the Crawford County Sheriff's Department [ECF Nos. 192-5, Exhibits H, I, J, and W]. Plaintiffs also reference numerous complaints filed after the March 7, 2008 arrests in their Amended Complaint.

show that the right was clearly established to bar the affirmative defense of qualified immunity. The Supreme Court, in *Reichle v. Howards,*, observed that it was *not* clearly established that an arrest supported by probable cause could violate the First Amendment. ⸻ U.S. ⸻, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012). Defendant Coleman is entitled to qualified immunity on Counts I and II for claims pertaining to the First Amendment as his conduct did not violate clearly established Constitutional rights of which a reasonable officer would have known.

In Count III, Plaintiff Copling also alleges that her rights were violated in retaliation for the exercise of her First Amendment rights. However, there are no facts alleged by Plaintiffs that could be construed as a deprivation of her First Amendment rights under § 1983. Copling was not subject to arrest. The only facts set forth involving Plaintiff Copling and Defendant Coleman, relate to his presence during the arrest of Plaintiff Lisa King, which occurred at Plaintiff Copling's home. The Amended Complaint states that Defendant Coleman refused to tell Plaintiff Copling the reason for Lisa King's arrest and that his behavior toward Copling made Lisa King fear for Copling's well-being. Neither of these two allegations are sufficient to implicate Defendant Copling's constitutional rights. Additionally, the Plaintiffs' unsworn statements allege that Coleman lunged at Copling. As noted previously, however, Plaintiff did not specifically controvert facts offered by Defendants that Coleman did not touch, threaten, or behave inappropriately toward Copling.[10] As those statements were deemed admitted, there is no other behavior by Defendant Coleman that could be construed as giving rise to a violation of Plaintiff Copling's rights under § 1983.

### 2. Plaintiffs' Fourth Amendment Claims Against Defendant Coleman

---

[10]See Footnote 8, *supra*.

Plaintiffs, although claiming a Fourth Amendment violation under § 1983 in Counts I, II, and III, do not set forth any facts indicating specific acts of Defendant Coleman constituting an unreasonable search and seizure. Defendants argue that Defendant Coleman is entitled to qualified immunity, as his participation in the arrests of Pitts and King does not give rise to an Constitutional violation under the Fourth Amendment. This Court agrees. As the uncontroverted facts establish, Defendant Coleman was not the arresting officer, nor did he search or seize anything.[11]

Defendants further maintain that Coleman's actions during the arrests do not constitute excessive force under the Fourth Amendment. The right to be free from excessive force is a clearly established right under the Fourth Amendment's prohibition against unreasonable seizures of the person. *See Guite v. Wright,* 147 F.3d 747, 750 (8th Cir. 1998). "The violation of this right will, of course, support a § 1983 action." *Crumley v. City of St. Paul,* 324 F.3d 1003, 1007 (8th Cir. 2003). Nevertheless, an officer is entitled to qualified immunity when any force used is 'objectively reasonable' in light of the facts and circumstances confronting the officer. *Guite,* 147 F.3d at 750 (internal quotations and citation omitted). "Once the predicate facts are established, the reasonableness of the official's conduct under the circumstances is a question of law." *Tlamka v. Serrell,* 244 F.3d 628, 632 (8th Cir. 2001) (internal citation omitted). Also, "the lack, or minor degree, of any injury sustained during an arrest is relevant in considering the reasonableness of the force used." *Cook v. City of Bella Villa,* 582 F.3d 840, 850 (8th Cir. 2009) (internal citation omitted); *see also Wertish v. Krueger,* 433 F.3d 1062, 1067 (8th Cir. 2006) (concluding "relatively minor scrapes and bruises" combined with a "less-than-permanent

---

[11]Plaintiffs do allege that arresting officer (and Defendant), Paul Crow, seized Plaintiff King's phone, but do not allege any personal involvement of Defendant Coleman regarding the phone [ECF No. 89, ¶ 60].

aggravation of a prior shoulder condition were de minimis injuries" which did not support a finding of excessive force).

Here, it is uncontroverted that Defendant Coleman did not arrest either Plaintiff and was present only as back-up. The only facts that could give rise to an allegation of excessive force would be Plaintiff Copling's claim that Defendant Coleman lunged in her direction. However, as discussed above, it is uncontroverted that he did not touch, threaten or behave inappropriately toward Plaintiff Copling. Even if this statement was not deemed admitted, a threatening lunge without any bodily contact, and no resulting injury, is objectively reasonable during an arrest.[12] Furthermore, Defendant Coleman is entitled to qualified immunity as a reasonable official would not understand that a lunge in someone's direction during an arrest clearly violated an established constitutional right. As Defendant Coleman's conduct toward Plaintiffs was objectively reasonable under the circumstances of the arrests, and not in violation of a clearly established right, he is entitled to qualified immunity under § 1983 and the Fourth Amendment.

### 3. Plaintiffs' Fourteenth Amendment Claims Against Defendant Coleman

Plaintiffs have alleged in Counts I, II, and III of the Amended Complaint that their rights were violated under the Fourteenth Amendment. As with the First and Fourth Amendments, Plaintiffs do not indicate the manner in which those rights were violated, relying instead on the incorporation of the 245 preceding paragraphs.

In the Amended Complaint, Plaintiffs allege a Due Process and Equal Rights of the Law violation [ECF No. 89, ¶ 2]. Defendants argue that, to the extent that Plaintiffs are claiming a

---

[12]Further, an excessive force claim cannot be sustained under Plaintiffs' allegations of acts that occurred during Pitts' arrest. Plaintiffs claim *Pitts' husband*, *Jerry* was threatened when the officers forced their way in and drew a gun. Jerry Pitts is no longer a party to the action.

violation of the equal protection clause of the Fourteenth Amendment, it does not apply as Plaintiffs are not, and have not alleged that they are members of a protected class. "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 341 (8th Cir. 1990) (citing *Johnson v. Morel,* 876 F.2d 477, 479 (5th Cir. 1989) (en banc)). If Plaintiffs do not assert that they are members of a protected class, they must prove that they were "treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *See Village of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, (2000) (stating that, to allege a "class-of-one" equal protection claim, the plaintiff must assert that "he had been intentionally treated differently than others similarly situated and that there is no rational basis for the difference in treatment"); *see also Nolan v. Thompson,* 521 F.3d 983, 989 –990 (8th Cir. 2008). Here, Plaintiffs do not claim membership in a protected class. Furthermore, beyond a broad allegation, Plaintiffs do not offer any evidence that they were treated differently by Defendants than others similarly situated, or that an equal protection "class-of-one" claim under these alleged facts, is an actionable claim. Therefore, the equal protection clause of the Fourteenth Amendment cannot form a valid basis for their § 1983 claims.

Similarly, Defendants also maintain that the undisputed facts do not support a due process violation under the Fourteenth Amendment. Defendants correctly note that, even if Defendant Coleman was the arresting officer, an arrest executed pursuant to a facially valid warrant does not constitute a due process violation under § 1983. *See Fair*, 844 F.2d at 569 (citation omitted) (explaining that "an arrest executed pursuant to a facially valid warrant generally does not give rise to a cause of action under 42 U.S.C. § 1983").

## 4.    Plaintiffs' Claims Against Defendant Martin in his Individual Capacity

In Counts I, II, and III, Plaintiffs also claim Defendant Martin violated Plaintiffs First Amendment rights in retaliation for exercising their right to freedom of speech, as well as their Fourth and Fourteenth Amendment rights.  As noted with Defendant Coleman, Plaintiffs do not specify any act by Defendant Martin in violation of Plaintiffs' First, Fourth, or Fourteenth Amendment rights.  (Plaintiffs also make broad allegations of inadequate training, and failure to supervise and protect by Defendant Martin, which are discussed separately, *infra*.)  The only conduct cited by Plaintiffs pertaining to Defendant Martin, is the allegation in the Amended Complaint surrounding Martin's investigation of Plaintiff Pitts' complaint against officerTim Bailey.  Defendants, however, offer evidence that on July 25, 2011, Sheriff Martin requested the Crawford County prosecutor to investigate Pitts allegations of corruption.[13]  Plaintiffs do not contravert this evidence or offer evidence of other complaints filed against Officer Bailey for which there was no response by Defendant Martin.  As such, there is no genuine issue of material fact as to Defendant Martin's alleged failure to investigate Plaintiff Pitts' complaint.

Furthermore, Defendant Martin was not personally involved in Plaintiffs' arrests, and 42 U.S.C. § 1983 does not permit suit based on a respondeat superior theory of liability.[14]  *See Martin v. Sargent*, 780 F.2d 1334, 1335 (8th Cir. 1985).  Thus, Defendant Martin is entitled to summary judgment on the First and Fourth Amendment claims against him in his individual

---

[13]Defendant Martin, in his sworn affidavit offers a July 25, 2011 letter requesting an investigation of Pitts complaints [ECF 179-12, Exhibit J-1].  Plaintiffs offer a complaint dated June 8, 2011 alleging corruption, and, seemingly, the impetus of Martin's letter [ECF No. 192-5, Exhibit W].  Plaintiffs do not submit any evidence of filed complaints describing events alleged in the Amended Complaint concerning Defendant Tim Bailey.

[14]Defendant Martin is the Sheriff of the Crawford County Sheriff's Department.

capacity under Counts I, II, and III.  Equal protection claims and due process claims under the Fourteenth Amendment fail as to Defendant Martin under the same rationale stated above for Defendant Coleman, and he is also granted summary judgment on those allegations.

**5.    Claims Against Defendant Martin in His Individual Capacity for Failure to Supervise and Train and Failure to Protect**

In the "Facts" section of their Amended Complaint, Plaintiffs allege that Defendant Martin violated the constitutional rights of Plaintiffs due to his lack of supervision and proper training of officers [ECF No. 89, ¶ 233].  Plaintiffs do not specify whether these allegations are against Defendant Martin in his individual or official capacity.  Defendants argue, that to the extent that the allegation is construed against Defendant Martin in his individual capacity, he is entitled to qualified immunity.

A supervisor may be held individually liable under § 1983 if he directly participates in a constitutional violation or if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights.  *Jones v. City of Stuttgart*, No. 2:06CV00214 JLH, 2008 WL 4368909, at *3 (E.D. Ark. Sept. 23, 2008).  To prove inadequate training or supervision, the plaintiff must show that the supervisor was "deliberately indifferent" to or "tacitly authorized" the offending acts, which requires a showing that the supervisor had notice that the training and supervision were inadequate and likely to result in a constitutional violation. *Id.*  A "single incident, or a series of isolated incidents," usually will not provide a sufficient "basis upon which to assign supervisory liability."  *Howard v. Adkison,* 887 F.2d 134, 138 (8th Cir. 1989).

Here, it is uncontroverted that Defendant Martin did not directly participate in the arrests of Plaintiffs King and Pitts.  Additionally, there is no evidence presented that Defendant Martin's

supervision or training of Deputy Coleman deprived Plaintiffs of their rights. Furthermore, as the arrests were pursuant to a facially valid warrant, there is no evidence of a constitutional violation by Defendant Coleman. Nor is there evidence presented of constitutional violations by other officers serving arrest warrants, that would put Martin on notice that the training and supervision were inadequate and likely to result in a constitutional infringement. Plaintiffs have not alleged any facts to establish that Defendant Martin was "deliberately indifferent" to, or "tacitly authorized," unconstitutional arrests. It is undisputed that Defendant Coleman was POST certified and has completed many hours of continuing education pursuant to POST requirements [ECF No. 179, ¶¶ 15-22]. Furthermore, all officers in the Crawford County Sheriff's Department are POST certified [ECF No. 179, ¶ 23]. Plaintiffs fail to offer evidence of any kind that Coleman, or any officer, was insufficiently trained. In light of the evidence of training deemed admitted by the Plaintiffs, as well as the failure to establish a constitutional violation by Deputy Coleman as to the arrests of Pitts and King, there is no basis to establish inadequate training or supervisory liability.

Although not enumerated in a specific count, Plaintiffs also allege in the "Facts" section of the Amended Complaint that Defendant Martin failed to protect the victims of domestic violence [ECF No. 89, ¶ 233]. This is an apparent reference to actions of Pitts and King's father, Leroy Copling, against Plaintiffs.[15] Plaintiffs fail to connect this allegation with any acts or omissions by Defendant Martin. Even if Plaintiffs could somehow establish that Martin failed to

---

[15]Plaintiffs allege several incidents that involve accusations of domestic abuse. They claim that the incident giving rise to their elder abuse charges involved domestic abuse by their father [ECF No. 89, ¶ 37]. They also allege that Leroy Copling hit Plaintiff King on the night of the arrests [ECF No. 89, ¶ 56]. There are also claims of domestic abuse toward Plaintiff Copling by her husband [ECF No. 89, ¶¶ 93-100]. Other than a conclusory accusation of failure to protect, however, Plaintiffs do not connect these incidents in any way with Defendant Martin. In fact, the incidents primarily represent 911 calls allegedly involving the Cuba Police Department.

protect Plaintiffs from Leroy Copling, the Supreme Court has stated that a person generally has no due process right to be protected by the government against violence inflicted by a private actor, and therefore the Due Process clause will not afford a basis for an action under § 1983 for injury due to such violence.  *DeShaney v. Winnebago County Dept. of Soc. Serv*., 489 U.S. 189, 197, 109 S.Ct. 998 (1989).  The court agrees that Plaintiffs' allegations against Defendant Martin based on a failure to protect do not support the existence of a material fact, and Defendant Martin is entitled to summary judgment as a matter of law.

### B.      Claims Against Defendants Martin and Coleman inTheir Official Capacity

In the "Introduction" to their Amended Complaint, Plaintiffs assert claims against Defendants in their individual and official capacities.  Defendants Martin and Coleman argue that they are entitled to summary judgment on the Plaintiffs' First, Fourth, and Fourteenth Amendment claims against them in their official capacity under Counts I, II, and III.

Plaintiffs' claims against Defendants Martin and Coleman in their official capacity are deemed to be actions against Crawford County.  A suit against a public employee in his or her official capacity is merely a suit against the public employer.  *Johnson v. Outboard Marine Corp*. 172 F.3d 531, 535 (8th Cir. 1999).  Liability under § 1983 for a governmental entity must be based upon an official custom, policy, or practice of the city that causes the constitutional deprivation,  *Monell v. New York City Dep't of Soc. Serv.s,* 436 U.S. 658, 690–94 (1978); *Davison v. City of Minneapolis, Minn.,* 490 F.3d. 648 (8th Cir. 2007); *Granda v. City of St. Louis,* 472 F.3d 565, 568 (8th Cir. 2007);  *Avalos v. City of Glenwood,* 382 F.3d 792, 802 (8th Cir. 2004), or is so pervasive among non-policymaking employees of the municipality so "as to constitute a custom or usage with the force of law."  *Granda,* 472 F.3d at 568 (quoting *Kuha v. City of Minnetonka,* 365 F.3d 590, 603 (8th Cir. 2003).  Liability will not attach simply because

the municipality employs an alleged tort-feasor. *Monell,* 436 U .S. at 694. Municipalities cannot

be held liable on a *respondeat superior* theory under § 1983 for the acts of their employees.

*Monell,* 436 U.S. at 694; *see, Connick v. Thompson,* ——U.S. ——, 131 S.Ct. 1350, 1359 (2011)

(citing *Monell, supra*.); *Parrish v. Ball,* 594 F.3d 993, 997 (8th Cir. 2010) (citing *Monell,*

*supra*).

      Crawford County may be subject to § 1983 liability only if it had a "policy or custom" of

failing to act upon prior similar complaints of unconstitutional conduct, which caused the

constitutional injury at issue. *Andrews v. Fowler*, 98 F.3d 1069, 1074 -1075 (8th Cir. 1996).

There must exist a prior pattern of unconstitutional conduct that is so "persistent and

widespread" as to have the effect and force of law. *Id.* at 1075. "To establish a city's liability

based on its failure to prevent misconduct by employees, the plaintiff must show that city

officials had knowledge of prior incidents of police misconduct and deliberately failed to take

remedial action." *Id.*

      Defendants argue that Plaintiffs have produced no evidence that any custom or policy

existed in the County that authorized deputies to make retaliatory arrests, seize property

unlawfully, use excessive force, or that the County had notice of their deputies doing so. This

Court agrees. Even if a constitutional violation could be established as to the instant arrests,

Plaintiffs would still need to show a requisite degree of fault by proof of a background of events

that establish that Crawford County essentially decided to violate the Constitution. Plaintiffs

offer no such evidence that the County was deliberately indifferent to unconstitutional arrests.

      Additionally, Defendants also claim that any allegation against Defendant Martin, in his

official capacity, for the failure to train and supervise, is also entitled to summary judgment. As

noted, a claim against Defendant Martin in his official capacity[16] is a claim against Crawford County. In *Sitzes v. City of W. Memphis Ark.*, the district court granted summary judgment to the defendants on plaintiffs' failure to train and failure to supervise claims, holding that such claims could not be sustained absent an underlying constitutional violation by the officer. 606 F.3d 461, 470–71 (8th Cir. 2010). *Also see*, *e.g.*, *City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) (per curiam); *Monell,* 436 U.S. at 691 ("Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."); *Sanders v. City of Minneapolis, Minn.,* 474 F.3d 523, 527 (8th Cir. 2007) ("Without a constitutional violation by the individual officers, there can be no § 1983 or *Monell* failure to train municipal liability.").

This Court has already determined that there is not a genuine issue of material fact as to Defendant Martin and Coleman's alleged violation of Plaintiffs' constitutional rights in their individual capacity; therefore, Plaintiffs' failure-to-train and failure-to-supervise claims against Defendant Martin in his official capacity cannot be sustained in the absence of an underlying constitutional violation.

## IV.    CONCLUSION

Plaintiffs have failed to meet their burden to designate specific facts creating a triable controversy. They have not demonstrated a genuine issue of material fact as to any claim against Defendants Martin and Coleman. Defendants Martin and Coleman, in their individual and official capacity, are entitled to summary judgment as a matter of law on Counts I, II, and III under 42 U.S.C. § 1983.

---

[16]According to the Amended Complaint, Defendant Martin is the highest-ranking law enforcement officer, and ultimate policy maker for Crawford County [ECF No. 89, ¶ 25].

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Jay Coleman and Randy Martin's Motion for Summary Judgment [ECF No. 177] is **GRANTED**. Counts I, II, and III of Plaintiffs' Amended Complaint, against Defendants Martin and Coleman, are dismissed with prejudice.

Dated this ___16th___ day of November, 2012.

_____

E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE