UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

SHARON PITTS, et al.,            )
                                 )
          Plaintiff(s),          )
                                 )
     vs.                         )        Case No. 4:10CV00274 ERW
                                 )
CITY OF CUBA, et al.,            )
                                 )
          Defendant(s).          )

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendants, City of Cuba, City of Cuba Police Department, Ralph Bayliss, Les Murdock, Maurice Grant, Harold Halbert, Faye Howard, Kenny Killeen, Kevin Copling, Kent Robinson, Paul Crow, Doug Shelton, Jason Wilkerson, and Tim Bailey's Motion for Summary Judgment [ECF No. 180]. For the reasons set forth below, their motion is granted in part, and denied in part.

## I.    BACKGROUND

On February 16, 2010, Plaintiffs Sharon Pitts ("Plaintiff Pitts"), Lisa King ("Plaintiff King"), Marilyn Copling ("Plaintiff Copling"), and Daniel Pitts, (collectively, "Plaintiffs"), acting *pro se*, filed a complaint against twenty-two individuals and eight public entities [ECF No. 1].[1] Plaintiffs filed an Amended Complaint on January 31, 2011 [ECF No. 89]. Plaintiffs set forth twenty-four counts of alleged constitutional and civil rights violations. In their Amended Complaint, Plaintiffs allege eighteen claims (pertaining to Counts I, II, III, V, VI, VII, VIII, X, XI, XII, XIV, XV, XVI, XVII, XIX, XX, XXI, and XXIV), against Defendants: City of Cuba,

---

[1]Daniel Pitts is no longer a party to this action. He was terminated from the lawsuit on August 30, 2012.

City of Cuba Police Department, Ralph Bayliss ("Defendant Bayliss"), Les Murdock ("Defendant Murdock"), Maurice Grant ("Defendant Grant"), Harold Halbert ("Defendant Halbert"), Faye Howard ("Defendant Howard"), Kenny Killeen ("Defendant Killeen"), Kevin Copling ("Defendant Copling"), Kent Robinson ("Defendant Robinson"), Paul Crow ("Defendant Crow"), Doug Shelton ("Defendant Shelton"), Jason Wilkerson ("Defendant Wilkerson"), and Tim Bailey ("Defendant Bailey") (collectively, "Defendants"), for violations of their rights under 42 U.S.C. §§ 1983, 1985, and 1986; First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.  On September 24, 2012, Defendants filed a Motion for Summary Judgment [ECF No. 180] alleging that there existed no genuine dispute as to any material fact, and that Defendants were entitled to judgment as a matter of law.  Plaintiffs filed their Response in Opposition to Defendants' Motion for Summary Judgment ("Response in Opposition") on November 5, 2012 [ECF Nos. 200, 201].  Defendants filed their Reply on November 16, 2012 [ECF No. 209].

In compliance with E.D. Mo. 7 - 4.01(E), Defendants filed a Statement of Undisputed Material Facts [ECF No. 180-1] in support of their Motion for Summary Judgment.  Plaintiffs filed a Statement of Undisputed Material Facts on November 5, 2012 [ECF No. 202].  Plaintiffs do *not* make reference to the facts set forth by Defendants in their Statement of Undisputed Material Facts, nor do they note the paragraph number from the Defendants' listing of facts, as required by this Court's Local Rules.

The Statement of Undisputed Material Facts submitted by Plaintiffs contains many factual assertions that are wholly irrelevant for purposes of evaluating Defendants' Motion. Because Plaintiffs failed to abide by local rules, and controvert the matters set forth by Defendants in their Statement of Uncontroverted Material Facts, the assertions are deemed

admitted.[2]  *See Jones v. United Parcel Serv., Inc.*, 461 F.3d 982, 991 (8th Cir. 2006) (concluding that the district court did not abuse its discretion in deeming defendants' statements admitted, as plaintiffs' statement of controverted facts and response to defendants' uncontroverted facts violated local rules).

The essence of Plaintiffs' case revolves around several key events.  On February 28, 2008, Plaintiffs Pitts and King were visiting at the home of their parents, William (Leroy) Copling and Plaintiff Marilyn Copling, when an altercation occurred.  Their father left his residence and went to his son, Kevin Copling's home, where a 911 call was placed on his behalf, alleging abuse by Plaintiffs Pitts and King.  Plaintiffs Pitts and King remained at their parents' home, and also placed a call to 911, alleging that their father assaulted them. This incident led to the arrests of Plaintiffs Pitts and King on elder abuse charges on March 7, 2008.  On April 24, 2008, a 911 call was made by Plaintiff Pitts in reference to a possible threat against Plaintiffs, which was conveyed by the 911 operator as an alleged disturbance at Plaintiff Copling's home. As a result of this call, Defendant Shelton prepared a probable cause statement, alleging that Plaintiff Pitts filed a false report.  Plaintiff Pitts was also issued a citation for trespassing at the Wagon Wheel Motel in 2008, and was arrested on January 21, 2010, by Defendant Wilkerson, for the assault of her brother, Dennis Copling.  Plaintiffs have filed many complaints with the Cuba Police Department and the Cuba City Council.  Numerous 911 calls have been made reporting alleged harassment and domestic abuse.  Plaintiffs name several Defendants as members of an alleged conspiracy to deprive Plaintiffs of their constitutional rights in retaliation for their many complaints.

---

[2]All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.  E.D. Mo. 7 - 4.01(E).

The following facts are those deemed admitted as Plaintiffs failed to controvert them.[3]

On February 28, 2008, Officer Doug Shelton took a statement from Leroy Copling in which Copling claimed to have been physically assaulted by Lisa King and verbally abused by both King and Sharon Pitts. Officer Doug Shelton observed red marks on Leroy Copling's neck which Shelton believed were consistent with Copling's claim. Officer Shelton also interviewed Sharon Pitts, Lisa King, and Marilyn Copling about the incident. Lisa King claimed to have a video of the incident on her cellular phone, but refused to turn the phone over to Officer Shelton. Marilyn Copling claimed to have a recording of the incident, to which Officer Shelton listened at the scene. Officer Shelton ultimately filed probable cause statements against Sharon Pitts and Lisa King for the crime of Elder Abuse. Warrants were issued for Sharon Pitts' and Lisa King's arrests for Elder Abuse. On March 7, 2008, Sharon Pitts was arrested by a Highway Patrol Officer pursuant to the warrant for Elder Abuse. On March 7, 2008, Lisa King was arrested by Paul Crow pursuant to the warrant for Elder Abuse. On March 7, 2008, Paul Crow seized a cellular phone belonging to Lisa King. The cell phone seized by Chief Crow was the same phone Ms. King claimed to have video recordings of the February 28, 2008, incident on it. Chief Crow applied for and was granted a warrant to review the contents of the cell phone. Lisa King's cell phone was returned to her once her criminal charges for Elder Abuse had been resolved.

On October 7, 2008, Officer Jason Wilkerson was dispatched to the Wagon Wheel Motel in Cuba, Missouri. At the time, the Wagon Wheel Motel was owned by the Armstrong family. Upon arrival, Officer Wilkerson was informed by the owners of the Wagon Wheel Motel that

---

[3]The facts contained in this section are the same facts set forth in the Defendants' Statement of Undisputed Material Facts [ECF No. 180-1]. The Statement of Undisputed Material Facts contains citations to the record, in support of each fact, which are not repeated here.

Sharon Pitts had been there, despite their prior warnings that she was not welcome on their property and that, this day, Pitts had refused to leave even when commanded to do so. Wilkerson later received written statements from the Armstrongs setting forth their complaint against Sharon Pitts. On the day of the incident, Officer Wilkerson interviewed Sharon Pitts, who claimed she had been assaulted by one of the Armstrongs. Officer Wilkerson issued Ms. Pitts a citation for trespassing based on the verbal statements he had taken from the Armstrongs.

On April 24, 2008, Officer Doug Shelton received a call from dispatch alerting him to a possible disturbance at the residence of Marilyn and Leroy Copling. Sharon Pitts had called dispatch asking for an officer to investigate threats. The dispatcher told Officer Shelton, "The third party report states that there's a female threatening her father and mother and would like an officer to respond." Officer Shelton responded to the Copling residence and, once there, talked with Marilyn Copling, who told Officer Shelton there was no one there threatening her and there had not been anyone there all day. Officer Shelton determined he had probable cause to believe Sharon Pitts had committed the crime of Filing a False Police Report, and so filled out a probable cause statement to that effect.

On January 21, 2010, Officer Jason Wilkerson investigated a complaint by Sharon Pitts that she had been attacked by her brother, Dennis Copling. Officer Wilkerson went to Dennis Copling's place of business to interview him regarding the allegation, and while there, observed a tear in Copling's jacket. Dennis Copling reported that Sharon Pitts had grabbed his collar, pulled him toward her, and, in the process, ripped his jacket. Officer Wilkerson interviewed other employees who were present when the incident occurred and determined that the other employees' stories matched Dennis Copling's account of the event. Based on the verbal witness statements, Officer Wilkerson determined he had probable cause to arrest Sharon Pitts.

During the period between January 1, 2007, and February 18, 2010, Sharon Pitts made forty-six calls to 911 dispatch. During the same period, Lisa King made eight calls to 911 dispatch, and Marilyn Copling made four calls. Pitts, King, and Copling have made numerous complaints to the Cuba City Council about Cuba Police officers and Kevin Copling. Pitts, King, and Copling have also made numerous complaints about the Cuba Police Department and its officers to other law enforcement agencies, including but not limited to, the Crawford County Sheriff's Office, the Missouri Highway Patrol, the Federal Bureau of Investigation, and the United States Department of Justice. None of Plaintiffs' many complaints has been substantiated by any agency.

## II.    LEGAL STANDARD

A court shall grant a motion for summary judgment only if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Lynn v. Deaconess Medical Center,* 160 F.3d 484, 486 (8th Cir. 1998) (citing Fed. R. Civ. P. 56(c)). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine dispute is one "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). There is no genuine issue as to any material fact if the nonmoving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case ..." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

The party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file which it believes demonstrates the

absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323. When such a motion is made and supported by the movant, the nonmoving party may not rest on her pleadings but must produce sufficient evidence to support the existence of the essential elements of her case on which she bears the burden of proof. *Id.* at 324. In resisting a properly supported motion for summary judgment, the plaintiff has an affirmative burden to designate specific facts creating a triable controversy. *Crossley v. Georgia-Pacific Corp.,* 355 F.3d 1112, 1113 (8th Cir. 2004). The non-moving party must "substantiate [their] allegations with sufficient probative evidence that would permit a finding in [their] favor based on more than mere speculation, conjecture, or fantasy." *Wilson v. Int'l. Bus. Mach. Corp.,* 62 F.3d 237, 241 (8th Cir. 1995).

Further, the Court notes that it is "not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *White v. McDonnell Douglas Corp.,* 904 F.2d 456, 458 (8th Cir. 1990) (quoting *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989)).

## III.   PLAINTIFFS' CLAIMS AGAINST THE CITY OF CUBA POLICE DEPARTMENT AND THE CITY OF CUBA

The counts alleged against the Cuba Police Department and the City of Cuba, respectively, are:[4]

---

[4]Plaintiffs assert multiple counts under the Fifth and Eighth Amendments. However, the due process clause of the Fifth Amendment only applies to actions by the federal government. *Pub. Util. Comm'n of D.C. v. Pollak,* 343 U.S. 451, 72 S.Ct. 813, 820, 96 L.Ed. 1068 (1952). Here, Plaintiffs have not alleged that Defendants are federal employees or actors, so the due process clause of the Fifth Amendment does not apply, and cannot form the basis for Plaintiffs' underlying claims. The Eighth Amendment does not apply as Plaintiffs were not incarcerated pursuant to a conviction. *See Vaughn v. Green County*, 438 F.3d 845, 850 (8th Cir. 2006) ("Claims brought arising from pre-trial detention are analyzed under the Fourteenth Amendment rather than the Eighth Amendment").

1. Count XXI: Cuba Police Department - Police Misconduct (42 U.S.C. § 1983 and 1st, 4th, 5th, 8th, and 14th Amendments).
2. Count XXIV: City of Cuba (42 U.S.C. §§ 1983 and 1986, and 1st, 4th, 5th, 8th, and 14th Amendments).

Both of these counts are followed by various allegations. Plaintiffs additionally incorporate by reference a lengthy factual narrative consisting of over 300 preceding paragraphs. Also, it is noted that, although Plaintiffs cite violations of the 1st, 4th, 5th, 8th, and 14th Amendments, they offer no explanation or factual support for how their particular rights were violated.

**A.      Count XXI: City of Cuba Police Department**

In Count XXI of the Amended Complaint [ECF No. 89], Plaintiffs claim violations, under 42 U.S.C. § 1983, of their 1st, 4th, 5th, 8th, and 14th Amendment rights. Plaintiffs generally allege that the City of Cuba Police Department ("CPD") developed and maintained policies or customs exhibiting deliberate indifference to the violation of constitutional rights [ECF No 89, ¶ 308]. Plaintiffs also maintain that it was the policy and/or custom of the CPD to inadequately supervise or train its officers.[5] *Id.* at ¶ 314.

Defendants do not discuss the allegations against the CPD separately, but instead incorporate the CPD into their discussion of the City of Cuba's § 1983 liability. This Court finds, however, that under § 1983, a claim for relief must allege that a *person* acting under the color of state law deprived Plaintiffs of a constitutional right. Although Plaintiffs name the CPD as a Defendant, a police department is not usually considered a "person" within the meaning of § 1983. *See Dean v. Barber,* 951 F.2d 1210, 1214 (11th Cir. 1992) (holding that police and

---

[5]Plaintiffs reference the following officers of the CPD in Count XXI: Tim Bailey, Paul Crow, Doug Shelton, Richard Dildine, and Jason Wilkerson. According to Defendants, Richard Dildine has passed away and is no longer a party to this action.

sheriff's departments are not usually considered legal entities subject to suit); *Ketchum v. City of West Memphis,* 974 F.2d 81, 82 (8th Cir. 1992) (holding that the West Memphis Police Department and Paramedic Services are departments or subdivisions of the City government and not separate juridical entities).

As this Court discussed in its January 7, 2011 Memorandum and Order, dismissing Defendants Crawford County Sheriff's Department, Owensville Police Department, and Steelville Police Department, and again addressed by the Court in its June 16, 2011, and July 12, 2011 Memorandums and Orders, dismissing Defendants Lake Area Narcotics Group and South Central Drug Task Force, respectively, CPD is similarly "not [a] juridical entit[y] suable as such," rather, it is merely a subdivision of a larger governmental body. *Id; Catlett v. Jefferson County*, 299 F. Supp. 2d 967, 968-69 (E.D. Mo. 2004) (granting motion to dismiss filed by Jefferson County Sheriff's Department, upon finding that it is not a legal entity subject to suit under 42 U.S.C. § 1983). This Court, likewise, finds that as the CPD is not a juridical entity suable under § 1983, Count XXI will be dismissed. Therefore, Defendant CPD is terminated as the sole count against it will be dismissed.

**B.     Count XXIV: City of Cuba**

In the Amended Complaint, Plaintiffs claim acts of retaliation by the City of Cuba, under § 1983 and § 1986, in violation of their 1st, 4th, 5th, 8th, and 14th Amendment rights. Plaintiffs generally allege that the City of Cuba (the "City") developed and maintained policies or customs exhibiting deliberate indifference to the violation of constitutional rights [ECF No. 89, ¶ 368]. Plaintiffs argue that the City gained knowledge of Defendants' pattern of unconstitutional conduct through Plaintiffs' attendance at the City Council meetings and attempts at filing

complaints.[6]  *Id.* at ¶¶ 367, 370.  Examples of allegedly unconstitutional conduct enumerated by

Plaintiffs includes: failure to respond to 911 calls placed by Plaintiffs; false charges by the CPD;

and failure to stop harassment by Defendant Copling.  *Id.* at ¶¶ 91-98, 133.  Plaintiffs also

maintain that it was the policy and/or custom of the City to inadequately supervise or train its

employees.  *Id.* at ¶373.  Plaintiffs additionally allege that it was a policy or custom of the City to

inadequately or improperly investigate complaints.  *Id.* at ¶ 372.

Defendants argue that there is no liability for the city under *Monell v. New York City*

*Dep't of Soc. Serv.s*, 436 U.S. 658 (1978).  Under 42 U.S.C. § 1983, a municipality may not be

held vicariously liable for the unconstitutional acts of employees.  *See Monell,* 436 U.S. at 692-3.

Liability will not attach simply because the municipality employs an alleged tort-feasor.  *Id.* at

692.  However, a municipality may be held liable for the unconstitutional acts of its officials or

employees when those acts implement or execute an unconstitutional municipal policy or

custom.  *See Id.* at 694; *see also Doe v. Wash. County,* 150 F.3d 920, 922 (8th Cir. 1998).  For a

municipality to be liable, a plaintiff must prove that a municipal policy or custom was the

"moving force [behind] the constitutional violation."  *Monell,* 436 U.S. at 694; *see also Board of*

*Comm'rs v. Brown,* 520 U.S. 397, 400, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (holding that

only "deliberate" action by a municipality can meet the "moving force" requirement).

Furthermore, the terms "policy" and "custom" are not interchangeable when conducting a *Monell*

analysis.  *Mettler v. Whitledge* 165 F.3d 1197, 1204 (8th Cir. 1999).  Rather, a "policy" is an

---

[6]In Count XXIV, Plaintiffs allege the City had notice of the conduct of the following
Defendants: Tim Bailey as the City Marshall; Doug Shelton, Paul Crow, Richard Dildine, and
Jason Wilkerson as police officers; Kent Robinson as the City Attorney; Kenny Killeen as the
City of Cuba mayor; Kevin Copling, Faye Howard, Ralph Bayless, Maurice Grant, Les Murdock,
and Harold Halbert employed by the City as aldermen.  Plaintiffs allege the aldermen, mayor and
city attorney are final policy makers in charge of running the city.  *Id.* at ¶¶ 375, 382.

official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters.  *Id.*

The City of Cuba may be subject to § 1983 liability only if it had a "policy or custom" of failing to act upon prior similar complaints of unconstitutional conduct, which caused the constitutional injury at issue.  *Andrews v. Fowler*, 98 F.3d 1069, 1074-1075 (8th Cir. 1996). There must exist a prior pattern of unconstitutional conduct that is so "persistent and widespread" as to have the effect and force of law.  *Id.* at 1075.  "To establish a city's liability based on its failure to prevent misconduct by employees, the plaintiff must show that city officials had knowledge of prior incidents of police misconduct and deliberately failed to take remedial action."  *Id.*

Defendants argue that there is no policy or practice of the City of Cuba that encourages, requires, or rewards constitutional violations.  They offer affidavits from Defendants Crow, Bailey, Wilkerson, and Shelton, in which each specifically states that they are aware of no policy or custom to engage in false arrests, unlawful searches, or a conspiracy to violate civil rights [ECF Nos. 188-1, 188-2, 188-3, 188-4].  Defendants maintain that Plaintiffs have not met their burden to show evidence of similar acts, or a pattern of them.  This Court agrees.

Although Plaintiffs offer examples of various complaints that they have filed *personally* against officers and city officials (in particular, their brother, Defendant Kevin Copling, an alderman), they do not offer evidence of complaints by *other* citizens made against city officers, or unconstitutional acts directed at other citizens that would give rise to an inference of a pattern. Even if a constitutional violation could be established as to Plaintiffs themselves, they would still need to show a requisite degree of fault by proof of a background of events that establish that the City of Cuba essentially decided to violate the Constitution.  Here, there is no policy or custom

specifically identified by Plaintiffs. They have failed to offer any examples of *widespread* misconduct, beyond their own allegations. The undisputed fact that Plaintiffs filed numerous complaints does not carry the same weight in establishing a pattern of misconduct as numerous complaints from a multiplicity of citizens.

Similarly, Plaintiffs have not offered evidence that it is the policy or custom of the City of Cuba to inadequately train and supervise its employees. As noted above, to be actionable under § 1983, the city's failure to train must amount to deliberate indifference to the rights of the citizens of Cuba. Here, other than broad unsupported allegations in Count XXIV, Plaintiffs do not address the supervision or training of city employees. On the other hand, Defendants offer affidavits from City of Cuba Police officers (Defendants Crow, Shelton, Wilkerson, and Bailey) that they are Post-Certified and have maintained continuing education requirements [ECF Nos. 188-1, 188-2, 188-3, 188-4] . Defendants argue this is constitutionally adequate in the Eighth Circuit. *See Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 673 (8th Cir. 2007) (maintaining that [Defendants'] use of Arkansas Law Enforcement Training Academy and remedial training met the respective constitutional standards).

Therefore, Plaintiffs have failed to establish a genuine issue of material fact as to the existence of a policy or custom resulting constitutional violations by the City of Cuba under § 1983. As such, summary judgment will be granted as to Count XXIV, and the City of Cuba will be terminated as a Defendant.

## IV.    PLAINTIFFS' CONSPIRACY CLAIMS UNDER 42 U.S.C. §§ 1985 AND 1986 - COUNTS XI, XII, XIV, XV, XVI, AND XVII

Plaintiffs allege Counts XI, XII, XIV, XV, XVI, and XVII against Defendants Bayliss, Murdock, Grant, Halbert, Howard, Killeen, Copling, Robinson, Crow, Bailey, Wilkerson, and

Shelton.  Three of the Counts alleged against Defendants (Counts XI, XII, and XIV) are based on 42 U.S.C. § 1985, which creates a cause of action for conspiring to interfere with a person's civil rights.  Another three of the Counts alleged against Defendants (Counts XV, XVI, and XVII) are based on 42 U.S.C. § 1986, which creates a cause of action for neglect to prevent a conspiracy to interfere with a person's civil rights.

In order to state a claim for conspiracy under 42 U.S.C. § 1985, Plaintiffs must allege: "(1) the defendants conspired, (2) for the purpose of depriving any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws, that (3) one or more of the conspirators did or caused to be done any act in furtherance of the conspiracy, and (4) as a result, another was injured in his person or property or deprived of having and exercising any vital privilege of a citizen." *Rollen v. Coates*, No. 2:08CV34JCH, 2009 WL 2391970, at *2-3 (E.D. Mo. Aug. 3, 2009) (quoting *Criswell v. City of O'Fallon, Mo*., No. 4:06CV01565ERW, 2007 WL 1760744, at *5 (E.D. Mo. June 15, 2007)).

If Plaintiffs fail to state a valid conspiracy claim against Defendants under § 1985, Plaintiffs' § 1986 claims against Defendants must also be dismissed.  "A cause of action under § 1986 is dependent on a valid claim under § 1985." *Kaylor v. Fields*, 661 F.2d 1177, 1184 (8th Cir. 1981); *see also Hayward v. Health Dep't & Dep't of Law, City of Independence, Mo*., 98 F.App'x 566, at *1 (8th Cir. 2004) (per curiam) (citing *Kaylor*).

In their Memorandum in Support of Defendants' Motion for Summary Judgment [ECF No 189], Defendants argue that all of Plaintiffs' Civil Conspiracy claims under 42 U.S.C. § 1985, against all Defendants, are subject to summary judgment due to Plaintiffs' failure to demonstrate a class-based animus, or establish that Plaintiffs are part of a suspect class.  This Court agrees.  Here, Plaintiffs do not allege they are members of a suspect class, nor do they offer any evidence

of a class-based animus. Therefore, Plaintiffs fail to establish that a genuine issue of material fact as to the required second element of a § 1985 claim. As such, summary judgment will be granted as to Plaintiffs' claims against Defendants under § 1985. Because Plaintiffs fail to state valid conspiracy claims against Defendants under § 1985, Plaintiffs' § 1986 claims against Defendants must also be dismissed. The Court correspondingly will grant summary judgment as to all Defendants on Counts XI, XII, XIV, XV, XVI, and XVII.

## V. PLAINTIFFS' CLAIMS UNDER THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT - COUNTS I, II, AND III

In the Amended Complaint, Plaintiffs allege an Equal Rights of the Law violation [ECF No. 89, ¶ 2]. Defendants understand the basis of Plaintiffs' Equal Protection claims to be the alleged refusal of the CPD to take Plaintiffs' complaints seriously or believe them. Defendants argue that, to the extent that Plaintiffs are claiming a violation of the Equal Protection Clause of the Fourteenth Amendment, it does not apply, as Plaintiffs are not and have not alleged that they are members of a protected class. "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Nolan v. Thompson*, 521 F.3d 983, 989 (8th Cir. 2008); *Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990) (citing *Johnson v. Morel*, 876 F.2d 477, 479 (5th Cir. 1989) (en banc)). If Plaintiffs do not assert that they are members of a protected class, they must prove that they were "treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed. 2d 1060 (2000) (stating that, to allege a "class-of-one" equal protection claim, the plaintiff must assert that "he had been intentionally treated differently than others similarly situated and that there is no rational basis for the difference in

treatment"); *see also Nolan*, 521 F.3d at 989 –990.

Defendants cite to deposition testimony in which Plaintiffs allege that their calls to the Cuba Police are treated differently than other citizens, but offer no examples of the alleged disparity. Plaintiffs' response to this argument is to "object" to it, and state that they have filed "numerous complaints" that "fall on deaf ears." As such, Plaintiffs are simply re-iterating their former allegations, versus offering controverting evidence in the record of a disparity in treatment. Defendants further argue that even if an equal protection violation occurred, Defendant police officers have a rational basis for treating Plaintiffs' reports differently than other citizens. According to Defendants, Plaintiffs' lack of credibility, based on their plethora of complaints, provides a rational basis for any disparate treatment of Plaintiffs. In the Statement of Undisputed Material Facts, it is uncontroverted that Plaintiffs, collectively, placed 58 calls to the 911 dispatch between January 1, 2007, and February 18, 2010, and that numerous complaints were made to the City of Cuba Council and to other law enforcement agencies [ECF No. 180-1, ¶¶ 31 – 35].[7] It is further undisputed by Plaintiffs that none of their complaints have been substantiated by any agency. *Id.* at ¶ 36.

Here, as observed by Defendants, Plaintiffs do not claim membership in a protected class. Because Plaintiffs do not allege that they are members of a protected class, they must show that the Defendant police officers systematically and "intentionally treated [them] differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook,* 528 U.S. at 564. Identifying the *difference in treatment* is especially important in class-of-one cases for statistical reasons. *Nolan*, 521 F.3d at 990 (emphasis added).

_____

[7]It is uncontroverted that Plaintiffs placed complaints with the CPD, Crawford County Sheriff's Department, the Missouri Highway Patrol, the FBI, and the United States Department of Justice.

In the absence of a large number of disadvantaged people sharing a single characteristic, "there is no way to know whether the difference in treatment was occasioned by legitimate or illegitimate considerations without a comprehensive ... canvassing of all possible relevant factors." *Id.* (citing *Jennings v. City of Stillwater,* 383 F.3d 1199, 1213-14 (10th Cir. 2004)). A class-of-one plaintiff must therefore "provide a specific and detailed account of the nature of the preferred treatment of the favored class," especially when the state actors exercise broad discretion to balance a number of legitimate considerations. *Id.* (citing *Jennings*, 383 F.3d at 1214-15).

Plaintiffs have failed to provide evidence sufficient to meet this high burden of proof. They cite to *no* specific facts which establish a difference in the treatment they received from the manner in which others were treated. Plaintiffs do not provide *any* evidence, much less a detailed account of the preferred treatment by others. Plaintiffs have failed to raise a genuine issue of material fact as to whether they were intentionally treated differently than others similarly situated by the CPD. Further, they do not address Defendants' argument that the Plaintiffs' lack of credibility provides a rational basis for any alleged differential treatment. Thus, this Court finds that there is no genuine issue of material fact as to whether Defendants violated Plaintiffs' Equal Protection Rights under Counts I, II, and III.

## VI.     PLAINTIFFS' CLAIMS AGAINST DEFENDANTS BAYLISS, MURDOCK, GRANT, HALBERT, HOWARD, KILLEEN, AND ROBINSON

As an initial matter, Plaintiffs make allegations against the following Defendants in both their individual and official capacities [ECF No. 89, ¶ 1]. Plaintiffs' claims against Defendants in their official capacity are deemed to be actions against the City of Cuba. A suit against a public employee in his or her official capacity is merely a suit against the public employer. *Johnson v. Outboard Marine Corp*., 172 F.3d 531, 535 (8th Cir. 1999). As noted above, in

section III(B), for a municipality to be liable for the unconstitutional acts of its officials or employees, a plaintiff must prove that a municipal policy or custom was the moving force behind the constitutional violation. *Monell*, 436 U.S. at 694. This Court has already concluded that Plaintiffs have failed to establish a genuine issue of material fact as to the existence of a unconstitutional policy or custom by the City of Cuba. Therefore, claims against Defendants in their official capacity, need not be further addressed by the Court, and such claims alleged in official capacity will be dismissed.

Plaintiffs individually name Defendants Bayliss, Murdock, Grant, Halbert, Howard, Killeen, and Robinson in the following Counts:[8]

1. Count I: Retaliation for exercising free speech rights (42 U.S.C. § 1983 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Sharon Pitts;

2. Count II: Retaliation for exercising free speech rights (42 U.S.C. § 1983 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Lisa King;

3. Count III: Retaliation for exercising free speech rights (42 U.S.C. § 1983 and 1st, 4th, and 14th Amendments), asserted by Plaintiff Marilyn Copling;

4. Count XI: Conspiracy to interfere with civil rights (42 U.S.C. § 1985 and 1st, 4th, 14th Amendments), asserted by Plaintiff Sharon Pitts;

5. Count XII: Conspiracy to interfere with civil rights (42 U.S.C. § 1985 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Lisa King;

6. Count XIV: Conspiracy to interfere with civil rights (42 U.S.C. § 1985 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Marilyn Copling;

7. Count XV: Neglect to prevent conspiracy (42 U.S.C. § 1986 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Sharon Pitts;

8. Count XVI: Neglect to prevent conspiracy (42 U.S.C. § 1986 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Lisa King;

---

[8]*See* note 4, *supra*.

9.    Count XVII: Neglect to prevent conspiracy (42 U.S.C. § 1986 and
1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Marilyn
Copling.

Defendants Bayliss, Murdock, Grant, Halbert, and Howard were elected alderman for the

City Of Cuba at times relative to the Amended Complaint.[9]  Defendant Killeen served as the

mayor of Cuba, and Defendant Robinson was employed as city attorney.

**A.    Claims Against the Board of Alderman and Mayor – Defendants Bayliss,**
**Murdock, Grant, Halbert, Howard, and Killeen**

Defendants argue that Plaintiffs do not allege that any member of the Cuba Board of

Alderman, other than Kevin Copling, took any *individual* action which forms the basis of the

lawsuit.  Thus, Defendants maintain that the actions taken by the Board as a whole, give rise to

liability only in its *official capacity*, not individual capacity.  Defendants posit that Plaintiffs,

even though they named members of the Board in Counts I, II, III, XI, XII, XIV, XV, XVI, XVII

*as individuals*, only intended to sue them in their *official* capacity.  Defendants then subsume the

actions of the Board (as a whole) into their discussion of the liability of the City of Cuba, which

has been deemed subject to summary judgment under *Monell*.  Plaintiffs do not address

Defendants' characterization of the liability of the Board (and Defendants Bayliss, Murdock,

Grant, Halbert, Howard, and Killeen).

In general, Plaintiffs do not address Defendants' arguments in their responses to

Defendants' Motion.  (*See* Plaintiffs' Response to in Opposition to Defendant's City of Cuba, et.

al's Motion for Summary Judgment ("Response") [ECF No. 200], the Memorandum of Law in

Support of Plaintiffs Response in Opposition ("Memorandum in Opposition") [ECF No. 201],

_____

[9]Defendant Copling, an elected alderman, also named in the Amended Complaint, is
discussed separately below.

and Plaintiffs Supplement Response in Opposition ("Supplement") [ECF No. 204] (grammatical mistakes in the originals)). Instead, Plaintiffs merely state, in their Memorandum in Opposition, that Defendants violated Plaintiffs' constitutional rights under §§1983, 1985, and 1986, and then list numerous cases and exhibits. Notably, Plaintiffs do not tie any case or exhibit to a particular claim. Nor do Plaintiffs respond directly to legal arguments made by Defendants. As such, the Court has attempted to parse through these allegations and over 90 exhibits, to find a genuine issue of material fact as to the stated claims.[10]

Upon review of the lengthy Amended Complaint, the Court attempted to discern any actions taken by the mayor or Board members. Plaintiffs relate instances of attending City council meetings to file complaints regarding allegations of misconduct by the Cuba Police Department and harassment by Kevin Copling[11] [ECF No. 89, ¶¶ 107, 155, 160, 164]. Plaintiffs maintain that on different occasions, the Council refused to listen to Plaintiffs' complaints, refused to take written complaints, and denied their request to contact the Missouri State Highway Patrol. *Id.* at ¶¶ 165, 173, 174, 222. Although these allegations refer to the actions by the City Council, as a whole, and not a particular member, Plaintiffs do make a few specific references to individual city officials. Plaintiffs claim that the Mayor, Defendant Killeen, told them to contact the Missouri State Highway Patrol themselves, to get an attorney, "and refused to do anything about Defendants violating [Plaintiffs'] constitutional rights, choosing to listen to the city attorney: Kent Robinson's advise." *Id.* at ¶¶ 174, 222 (grammatical and spelling mistakes in

---

[10]Note that this summary by the Court of Plaintiffs' response to, and method of addressing Defendants' Motion for Summary Judgment, is common to all of the following Defendants, and the Counts alleged against them. The Court, however, to avoid repetition, will not reiterate this discussion for each Defendant.

[11]Defendant Kevin Copling is Plaintiffs Pitts and King's brother and Plaintiff Copling's son.

original).  In their Response, Plaintiffs also noted that Defendant Bayliss, an alderman, disclosed to Plaintiff Pitts that the City of Cuba had a meeting and decided that they were not going to do anything about her complaints [ECF No. 200, ¶ 4].

1.    **Counts I, II, and III**

Counts I, II, and III allege violations of Plaintiffs' rights in retaliation for exercising free speech rights under 42 U.S.C. § 1983.  As previously determined, this Court finds that any claims against Defendants in their *official* capacity under § 1983 fail to establish a genuine issue of material fact.  Defendants do not discuss the liability of the mayor or Board in their individual capacities under Counts I, II, and III, maintaining that most of the alleged acts do not implicate individual board members, but involve the Board as a whole.  The Court agrees that any assertions which cannot be identified with an individual Defendant cannot give rise to individual liability under § 1983.  By the plain terms of 42 U.S.C. § 1983, two, and only two allegations, are required in order to state a cause of action under § 1983: the complaint must allege that (1) some *person* has deprived the plaintiff of a federal right; and (2) the person who has deprived the plaintiff of that right acted under color of state law.  *See Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010) (quoting *Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009)).  Moreover, "[l]iability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights" protected by the Constitution.  *Madewell v. Roberts,* 909 F.2d 1203, 1208 (8th Cir. 1990) (internal citations omitted).  Thus, in order to state a cognizable Section 1983 claim, a complaint must set forth specific factual allegations showing what each named defendant allegedly did, or failed to do, that allegedly violated the plaintiff's federal constitutional rights.  *Egziabher v. Pearce,* No. 5:11CV5048, 2011 WL 1598715, at *2 (W.D. Ark. Mar. 28, 2011).  As such, the actions of the Board as a whole will not be deemed to be the

acts of Defendants Bayliss, Murdock, Grant, Halbert, Howard, Killeen, and Robinson as individuals. Also, although Plaintiffs describe Defendant Killeen, the mayor, as the "presiding city official over the Cuba City Council meetings" [ECF No. 89, ¶ 22], "42 U.S.C. § 1983 does not permit suit based on a respondeat superior theory of liability." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985). Thus, individual liability cannot be attributed to the Mayor under § 1983 for the Board's actions.

The limited references to *individual* acts by Defendants Killeen and Bayliss involve instructing the Plaintiffs to get a lawyer, listening to the city attorney's advice, and being informed that the City was not going to do anything about Plaintiffs' complaints. A § 1983 claim must allege a violation of a constitutional right. Plaintiffs do not show how these individual actions rise to the level of a constitutional protection, nor can the Court discern a violation.

Furthermore, Plaintiffs do not specifically name any of the Defendant Board members or mayor, other than Defendant Copling, as members of an alleged conspiracy in the Amended Complaint. "To prove a § 1983 conspiracy claim, plaintiff must show: (1) defendants conspired to deprive her of a constitutional right; (2) at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) the overt act injured her." *See Askew v. Millerd,* 191 F.3d 953, 957 (8th Cir. 1999). Therefore, because Plaintiffs have failed to establish the first element, that "defendants conspired," to the extent Plaintiffs allege a § 1983 conspiracy claim under Counts I, II, and III against Defendants Bayliss, Murdock, Grant, Halbert, Howard, and Killeen, the Court finds an absence of a genuine issue of material fact.

Therefore, the Court will grant summary judgment on Counts I, II, and III as to Defendants Bayliss, Murdock, Grant, Halbert, Howard, and Killeen.

### 2.   <u>Counts XI, XII, XIV, XV, XVI, and XVII</u>

As discussed previously, the Court will grant summary judgment as to Plaintiffs' conspiracy claims under § 1985 and § 1986 (Counts XI, XII, XIV, XV, XVI, XVII). Thus, summary judgment is granted as to *all* Counts alleged against Defendants Bayliss, Murdock, Grant, Halbert, Howard, and Killeen, and they are terminated as parties to this lawsuit.

**B.      Claims Against the City Attorney – Defendant Robinson**

Plaintiffs allege Defendant Robinson, City of Cuba attorney, is a final decision maker and policy maker. Defendants allege he is a contract attorney who provides legal advice to the Board of Aldermen. Defendants dispute Plaintiffs' characterization of Defendant Robinson as a decision maker, and state that there is no evidence in the record from which a fact-finder could conclude Defendant Robinson played any role other than city attorney [ECF No. 209].[12]

**1.      <u>Counts XI, XII, XIV, XV, XVI, XVII and § 1983 Conspiracy Claims Under Counts I, II, and III</u>**

Three of the Counts alleged against Defendant Robinson (Counts XI, XII, and XIV) are based on 42 U.S.C. § 1985, which creates a cause of action for conspiring to interfere with a person's civil rights. Another three of the Counts alleged against Defendant Robinson (Counts XV, XVI, and XVII) are based on 42 U.S.C. § 1986, which creates a cause of action for neglect to prevent a conspiracy to interfere with a person's civil rights. As discussed previously, the Court will grant summary judgment as to Plaintiffs' conspiracy claims under § 1985 and § 1986 (Counts XI, XII, XIV, XV, XVI, and XVII).

---

[12]Defendants cite to deposition testimony by Plaintiff Pitts where she concedes that her claims against Defendant Robinson are based entirely on his advice [ECF No. 209]. This Court agrees that Plaintiffs have offered no evidence on the record to support their contention that Defendant Robinson was a final decision-maker.

Plaintiffs do not specifically name Defendant Robinson as a member of an alleged conspiracy in the Amended Complaint. Under § 1983, a "plaintiff must show: (1) defendants conspired to deprive her of a constitutional right; (2) at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) the overt act injured her." *See Askew,* 191 F.3d at 957. Therefore, because Plaintiffs have failed to make a showing sufficient to establish the first element, that "defendants conspired," *to the extent* Plaintiffs allege a § 1983 conspiracy claim under Counts I, II, and III against Defendant Robinson, the Court finds an absence of a genuine issue of material fact. Thus, dismissal is proper as to civil conspiracy claims asserted against Defendant Robinson under § 1983, and Counts I, II, and III.

## 2.    Counts I, II, III

As the conspiracy Counts against Defendant Robinson warrant dismissal, only Counts I, II, and III, alleging violations of Plaintiffs' rights in retaliation for exercising free speech rights under 42 U.S.C. § 1983 remain. In their Amended Complaint, Plaintiffs allege Defendant Robinson advised the Council not to speak to Plaintiffs about their complaint filed against Defendant Shelton [ECF No. 89, ¶ 164]. Plaintiffs also assert that Defendant Robinson told Plaintiffs to contact the Missouri State Highway Patrol themselves about their alleged treatment from the CPD. *Id.* ¶ 222. Although not conceding that Defendant Robinson instructed Plaintiffs in this manner, Defendants argue, for purposes of summary judgment only, that even if Defendant Robinson had given the alleged legal advice, he is not liable under any § 1983 claim, as he is entitled to qualified immunity for actions taken in his individual capacity. Defendants argue that there was no clearly established law that would render Defendant Robinson's legal advice violative of Plaintiffs' constitutional rights. Defendants further note that it is the

Plaintiffs' burden to demonstrate that the law was clearly established at the time the violation occurred.

Under the doctrine of qualified immunity, officials performing discretionary functions should be shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Likewise, in the Eighth Circuit, a determination of whether an official is entitled to qualified immunity in a civil rights action, requires an examination of whether his or her conduct violated a constitutional right, and whether that right was clearly established. *Hutson v. Walker*, 688 F.3d 477, 483 (8th Cir. 2012) (internal citation omitted). For the purposes of qualified immunity analysis, "clearly established" means the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Jones v. McNeese*, 675 F.3d 1158, 1161 (8th Cir. 2012). Although the defendant bears the burden of proof for this affirmative defense, the plaintiff must demonstrate that the law was clearly established. *Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007) (citing *Sparr v. Ward*, 306 F.3d 589, 593 (8th Cir. 2002)).

Plaintiffs do not address Defendants' assertion of Defendant Robinson's qualified immunity under § 1983. They do reference a lengthy enumeration of cases in their Response.[13] Upon the Court's examination of the cases, only one of them, *Murray v. City of Onawa, Iowa*, 323 F.3d 616 (8th Cir. 2003), is an Eighth Circuit decision. However, the Court finds it inapplicable to the instant claims against Defendant Robinson. In their Supplement, Plaintiffs

---

[13]Note that Plaintiffs simply reference a list of cases supporting liability for the City of Cuba and Defendant Robinson. They fail however to identify how the listed cases relate to the Motion for Summary Judgment, nor do they identify which ones are applicable to Defendant Robinson.

"object" to Defendants' claim that Defendant Robinson is not liable [ECF No. 204, ¶ 52]. Then in a somewhat repetitive argument, Plaintiffs make multiple assertions, including that Defendant Robinson did not allow "the City of Cuba Mayor or Board of Alderman to take any kind of steps to prevent Plaintiffs Constitutional rights from being violated," and that he is "paid by the citizens . . . to provide legal advice and keep the City from being in lawsuits." *Id.* (grammatical mistakes in the original). Plaintiffs state that Defendant Robinson "over step (sic) the scope of his job and acted more like the Mayor making decisions instead of offering legal advice." *Id.* Notably, however, these somewhat broad and conclusory statements are not supported by reference to any evidentiary support in the record. Nor do Plaintiffs establish that Defendant Robinson is *not* entitled to qualified immunity as the law was clearly established that his conduct was unconstitutional. As such, Plaintiffs have failed to meet their burden, and Defendant Robinson is entitled to qualified immunity under Counts I, II, and III. Therefore, the Court will grant summary judgment as to all Counts (I, II, III, XI, XII, XIV, XV, XVI, XVII) against Defendant Robinson, and he will be terminated as a party to this lawsuit.

## VII. CLAIMS AGAINST DEFENDANTS CROW, COPLING, BAILEY, WILKERSON AND SHELTON IN THEIR INDIVIDUAL CAPACITY[14]

### A. Defendant Crow

---

[14]Claims against Defendants were alleged in their official capacity as well [ECF No. 89, ¶ 1]. However, as noted above, claims against Defendants Crow, Copling, Bailey, Wilkerson, and Shelton, in their official capacity, are deemed to be claims against the City of Cuba. Under a *Monell* analysis, this Court has previously concluded that Plaintiffs have failed to establish a genuine issue of material fact as to the existence of an unconstitutional policy or custom by the City of Cuba. Therefore, claims against Defendants Crow, Copling, Bailey, Wilkerson, and Shelton, in their official capacity, need not be further addressed by the Court.

The Counts asserted against Defendant Crow are as follows:[15]

1.     Count I: Retaliation for exercising free speech rights (42 U.S.C. § 1983 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Sharon Pitts;

2.     Count II: Retaliation for exercising free speech rights (42 U.S.C. § 1983 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Lisa King;

3.     Count III: Retaliation for exercising free speech rights (42 U.S.C. § 1983 and 1st, 4th, and 14th Amendments), asserted by Plaintiff Marilyn Copling;

4.     Count VI: False Arrest (42 U .S.C. § 1983 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Lisa King;

5.     Count XI: Conspiracy to interfere with civil rights (42 U.S.C. § 1985 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Sharon Pitts;

6.     Count XII: Conspiracy to interfere with civil rights (42 U.S.C. § 1985 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Lisa King;

7.     Count XIV: Conspiracy to interfere with civil rights (42 U.S.C. § 1985 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Marilyn Copling;

8.     Count XV: Neglect to prevent conspiracy (42 U.S.C. § 1986 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Sharon Pitts;

9.     Count XVI: Neglect to prevent conspiracy (42 U.S.C. § 1986 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Lisa King;

10.    Count XVII: Neglect to prevent conspiracy (42 U.S.C. § 1986 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Marilyn Copling;

11.    Count XX: Abuse of process (42 U.S.C. § 1985 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Lisa King.

In the Amended Complaint, Plaintiffs do not identify how Defendant Crow has allegedly violated their Constitutional rights under the above enumerated counts, but instead incorporate the lengthy recitation of facts preceding each Count. It appears that Plaintiffs make several assertions involving Defendant Crow, alleging that he arrested Plaintiff King on March 7, 2008

---

[15]Defendants remark that Defendant Crow is listed (as a defendant) to Plaintiffs' Count VIII. Upon review of the Amended Complaint, this statement is in error and will be disregarded as such. Also, *see* note 4, *supra*, as to claims under the Fifth and Eighth Amendments.

[ECF No. 89, ¶ 58]. Plaintiffs further maintain that he took Plaintiff King's cell phone without permission during the arrest. *Id.* at ¶ 60. In an attempt to have Plaintiff Pitts arrested for elder abuse, Plaintiffs allege Defendant Crow wrote a probable cause statement, in which he states that Pitts was antagonizing her father while Plaintiff King filmed the incident. *Id.* at ¶ 114. Plaintiffs also maintain that Defendant Crow wrote a probable cause statement in an attempt to have Plaintiff King arrested.[16] *Id.* at ¶ 115. Finally, upon the Court's review of the Amended Complaint, although Plaintiffs make numerous references to conspiracies, Defendant Crow is only alleged as being a part of one particular plan, against all three Plaintiffs: He was named in a plan to manufacture a false criminal case against Plaintiffs because they were on a Walmart video buying condoms. *Id.* at ¶ 128.

### 1. Counts XI, XII, XIV, XV, XVI, XVII and § 1983 Conspiracy Claims Under Counts I, II, and III

As discussed previously, the Court will grant summary judgment as to Plaintiffs' conspiracy claims under § 1985 and § 1986 (Counts XI, XII, XIV, XV, XVI, XVII). As such, the Court will turn to Plaintiffs' conspiracy claims under § 1983 against Defendant Crow, under Counts I, II, and III. To prove a § 1983 conspiracy claim, plaintiff must show: (1) defendants conspired to deprive her of a constitutional right; (2) at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) the overt act injured her. *Askew,* 191 F.3d at 957. Plaintiff is additionally required to prove a deprivation of a constitutional right

---

[16]It seems Plaintiffs' allegations that Defendant Crow wrote probable cause statements relate to Plaintiff Pitts and King's March 7, 2008 arrests for elder abuse. However, Defendants offer the *undisputed* fact that Defendant Shelton wrote these statements, as well as referencing authenticated copies of the statements in support of that fact [ECF Nos. 180-1, ¶ 6, and 182-7]. As Plaintiffs did not specifically controvert Defendants' Statement of Undisputed Material Facts, these facts are deemed admitted, and the Court will *not* consider these assertions any further as to Defendant Crow.

or privilege in order to prevail on a § 1983 civil conspiracy claim. *White v. McKinley,* 519 F.3d 806, 814 (8th Cir. 2008). She is not required to show that each participant in the conspiracy knew "the exact limits of the illegal plan," but she must show "evidence sufficient to support the conclusion that the defendants reached an agreement to deprive the plaintiff of constitutionally guaranteed rights." *Id.* at 816 ( quoting *Larson by Larson v. Miller,* 76 F.3d 1446, 1458 (8th Cir. 1996)). Defendants argue that a conspiracy claim under § 1983 fails as Plaintiffs neither demonstrate a constitutional violation, nor that Defendant Crow conspired.

Here, the Court concurs that Plaintiffs do not establish the element requiring a showing that Defendant Crow conspired, nor do they establish that their constitutional rights were violated. Plaintiffs only offer a mere allegation that Defendant Crow participated in a plan. This broad, conclusory allegation is not further supported by any facts offered by Plaintiffs to create a genuine material issue as to the conspiracy's existence, or Defendant Crow's participation in it. "Speculation and conjecture are not enough to prove a conspiracy exists." *Mettler,* 165 F.3d at 1206. A mere conclusory allegation that Defendant Crow conspired to violate Plaintiffs' rights, is not sufficient under § 1983, and summary judgment is appropriate as to any *conspiracy* allegation under Counts I, II, and III.

### 2.      Counts I, II, III, VI, and XX

Defendants argue that there are three claims against Defendant Crow brought by Plaintiff King: false arrest, false imprisonment,[17] and unlawful search and seizure based on her arrest on

---

[17]Plaintiffs do allege false imprisonment claims under Counts VII and VIII against other Defendants, however Defendant Crow is not named in either of these Counts. As Defendants do not further discuss false imprisonment, this assertion appears to be a typographical error.

March 7, 2008, and the seizure of her phone during the arrest.[18]  Defendants rely on the

affirmative defense of qualified immunity to support summary judgment on these claims.

Defendants argue that it is undisputed that the arrest of Plaintiff King by Defendant Crow was

supported by a warrant, and therefore, Defendants conclude it was supported by probable cause

[ECF No. 180-1, ¶ 9].  Defendants also refer to the undisputed fact that the probable cause

statements underlying the warrants against Plaintiffs Pitts and King were prepared by Officer

Shelton, not Defendant Crow.  *Id.* at ¶ 6.  As probable cause exists, Defendants argue, there is no

constitutional violation.

Similarly, Defendants argue that the seizure of Plaintiff King's cell phone during her

arrest was constitutional, and also, that Defendant Crow was entitled to qualified immunity.

Defendants maintain that seizure was proper as a search incident to an arrest and under the plain

view exception.  It is undisputed that Plaintiff King claimed to have video recordings on the

seized phone, of the February 28, 2008 incident that gave rise to her arrest.  *Id.* at ¶ 11.  It is

further uncontroverted that after the seizure, Defendant Crow applied for, and obtained a warrant

to search the phone.  *Id.* at ¶ 12.

As noted above, in the Eighth Circuit, a determination of whether an official is entitled to

qualified immunity in a civil rights action requires an examination of whether his or her conduct

violated a constitutional right, and whether that right was clearly established.  *Hutson*, 688 F.3d

at 483.  Furthermore, although defendant bears the burden of proof for this affirmative defense,

the *plaintiff* must demonstrate that the law was clearly established.  *Monroe*, 495 F.3d at 594

---

[18]Defendants maintain that Plaintiff Copling has suffered no injury by Defendants, and her only claim under § 1983 is limited to the Equal Protection violation discussed above [ECF No. 189, n. 7].  Defendants also do not mention any claims by Plaintiff Pitts against Defendant Crow, presumably as they found no factual allegations to support a claim.

(emphasis added). Here, Plaintiffs do not show that the law was clearly established that an arrest pursuant to a facially valid warrant is unconstitutional. In the Eighth Circuit, Defendant Crow is entitled to qualified immunity for his arrest of Plaintiff King, as "[a]n arrest executed pursuant to a facially valid warrant generally does not give rise to a cause of action under 42 U.S.C. § 1983 against the arresting officer." *Fair v. Fulbright*, 844 F.2d 567, 569 (8th Cir. 1988) (internal citation omitted).

The seizure of Plaintiff King's cell phone is analyzed under the Fourth Amendment, which guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV; *Sheets v. Butera*, 389 F.3d 772, 777 (8th Cir. 2004). The relevant inquiry under the Fourth Amendment is whether Defendant Crow had probable cause to seize the cell phone. Probable cause for a seizure is to be determined upon the objective facts available to the officers, and exists if "the totality of facts based on reasonably trustworthy information would justify a prudent person in believing the individual [seized] had committed ... an offense at the time of the [seizure]." *Id.* (internal quotations and citations omitted).

Here, it is uncontroverted that Plaintiff King had previously claimed that there was evidence of the incident underlying the charges against her on her cell phone. In fact, Plaintiffs themselves offer an affidavit by Plaintiff Copling, which states that Defendant Crow seized the phone after Plaintiff King told him she had videotaped the incident underlying the arrest [ECF No. 202-1, Exhibit I]. Plaintiffs do not address Defendants' arguments of qualified immunity, or attempt to satisfy their burden in showing that the law was clearly established in such a manner that Defendant Crow would have had notice that the seizure was unconstitutional. As such, the Court finds that a reasonable officer could find that probable cause existed to seize the phone.

Thus, Defendant Crow is entitled to qualified immunity and summary judgement under the Fourth Amendment for both the arrest and seizure.

Plaintiffs also generally allege violations of their First Amendment rights under § 1983 (and Counts I, II, and III), in the form of retaliation for the exercise of those rights. Defendants argue that Plaintiffs must show that Plaintiff King would not have been arrested but for Defendant Crow's retaliatory animus, which requires them to establish a complete *lack of probable cause*. In the context of a First Amendment retaliatory arrest claim, to show a violation of their rights, Plaintiffs must establish a causal connection between a defendant's retaliatory animus and [plaintiffs'] subsequent injury. *Baribeau v. City of Minneapolis,* 596 F.3d 465, 481 (8th Cir. 2010) (internal citations omitted). Furthermore, with a First Amendment retaliatory arrest claim, *lack* of probable cause is a necessary element. *McCabe v. Parker*, 608 F.3d 1068, 1075 (8th Cir. 2010) (emphasis added). As noted earlier, it is undisputed that Plaintiff King's arrest by Defendant Crow was supported by a facially valid warrant. Plaintiffs argue that there are errors of omission in the probable cause affidavits supporting the warrants. When considering qualified immunity, a warrant application must be "so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *George v. City of St. Louis,* 26 F.3d 55, 57 (8th Cir. 1994). Here, Plaintiffs allege the probable cause statements, undisputedly prepared by Defendant Shelton, should have more fully presented their version of events, however, this does not render those statements facially devoid of probable cause. Even if deficient, Defendant Crow did not prepare the probable cause statements, and was entitled to rely upon them. As the Supreme Court stated in *Whiteley v. Warden*, "officers called upon to aid other officers in executing arrest warrants, are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of

probable cause." 401 U.S. 560, 568 (1971). Plaintiffs have failed to meet their burden in establishing a lack of probable cause as to Plaintiff King's arrest, and therefore, Defendant Crow is entitled to qualified immunity, and summary judgment under § 1983 and the First Amendment.

Additionally, Plaintiffs allege, under Count XX, an abuse of process claim against Defendant Crow under § 1986. Defendants argue in a footnote, that they are unaware of any § 1985 abuse of process claim, and so do not address it.[19] Plaintiffs have conceded, as to other named defendants *not* represented in the instant Motion (Defendants Frank Magel and Shane Spratt), that the abuse of process claims are brought under state law [ECF No. 193-1].

As such, "[t]he law in Missouri is well settled. To sustain an action for abuse of process, the facts must demonstrate an illegal and improper use of such process that is not warranted or authorized, an ulterior motive in exercising such process, and damages." *Wells v. Orthwein,* 670 S.W.2d 529, 532 (Mo. App. E.D. 1984) (internal citation omitted). "The phrase 'use of process' as employed in that context refers to some willful, definite act not authorized by the process or aimed at an objective not legitimate in the proper employment of such process." *Boyer v. Carondelet Sav. & Loan Ass'n*, 633 S.W.2d 98, 101 n.6 (Mo. App. E.D. 1982). Assuming Plaintiffs, likewise, meant to bring an abuse of process claim against Defendant Crow under state law, the Court nevertheless finds that Plaintiffs have not shown a genuine issue of material fact as to an illegal or improper use of process. Defendants have established that the arrest of Plaintiff King and the seizure of her phone, were supported by a facially valid warrant and probable cause. As such, there are no facts alleged, or references to the record by Plaintiffs, to

---

[19]Defendants refer to Count XIX as stating an abuse of process claim under § 1985, instead of 1986, as stated in the Amended Complaint.

support a genuine issue of fact as to an illegal or improper use of process by Defendant Crow. Thus, he is entitled to summary judgment on Count XX.

This Court concludes that Defendant Crow is entitled to summary judgment on all Counts against him (I, II, III, VI, XI, XII, XIV, XV, XVI, XVII, and XX), and he is terminated as a party to this action.

### B. Defendant Copling

The following Counts are alleged against Defendant Copling:[20]

1. Count I: Retaliation for exercising free speech rights (42 U.S.C. § 1983 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Sharon Pitts;
2. Count II: Retaliation for exercising free speech rights (42 U.S.C. § 1983 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Lisa King;
3. Count III: Retaliation for exercising free speech rights (42 U.S.C. § 1983 and 1st, 4th, and 14th Amendments), asserted by Plaintiff Marilyn Copling;
4. Count XI: Conspiracy to interfere with civil rights (42 U.S.C. § 1985 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Sharon Pitts;
5. Count XII: Conspiracy to interfere with civil rights (42 U.S.C. § 1985 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Lisa King;
6. Count XIV: Conspiracy to interfere with civil rights (42 U.S.C. § 1985 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Marilyn Copling;
7. Count XV: Neglect to prevent conspiracy (42 U.S.C. § 1986 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Sharon Pitts;
8. Count XVI: Neglect to prevent conspiracy (42 U.S.C. § 1986 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Lisa King;
9. Count XVII: Neglect to prevent conspiracy (42 U.S.C. § 1986 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Marilyn Copling;
10. Count XIX: Abuse of process (42 U.S.C. § 1985 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Sharon Pitts;

---

[20]*See* note 4, *supra*.

33

11.     Count XX: Abuse of process (42 U.S.C. § 1985 and 1st, 4th, 5th,
        8th, 14th Amendments), asserted by Plaintiff Lisa King**.**

Defendants understand Plaintiffs' claims against Defendant Copling to be centered around his alleged harassment of Plaintiffs, utilizing his position as an alderman to continue the harassment, and participating in a conspiracy to deprive Plaintiffs of their rights.  Defendants posit that most of Plaintiffs' complaints against Defendant Copling consist of acts such as driving down the street, following Plaintiffs in Walmart, honking his horn at, looking at, or talking to them.  Defendants then argue, based on this alleged conduct, that Defendant Copling was not acting under the color of state law as required under § 1983.[21]  Defendants, citing to *West v. Atkins*, argue that, to satisfy § 1983, Defendant Copling's alleged harassment, must be made possible only because he is clothed in the authority of state law.  487 U.S. 42, 48 (1988).  Defendants also argue, that even if found to be acting under the color of state law, Defendant Copling is entitled to qualified immunity, as he did not violate Plaintiffs' constitutional rights.

Upon review of the lengthy recitation of factual assertions included in the Amended Complaint, there are numerous references to Defendant Copling.  Plaintiffs claim Defendant Copling bragged about having police officers make false reports whenever Plaintiffs filed complaints against him or others, and that he told Plaintiffs that they were going to be denied from addressing the City of Cuba Council [ECF No. 89, ¶¶ 119-120].  Plaintiffs confirm that on different occasions, the Council refused to listen to or take their written complaints, and denied their request to contact the Missouri State Highway Patrol.  *Id*. at ¶¶ 165, 173, 174.

---

[21]Counts I, II, and III are alleged under § 1983.  Under § 1983, a plaintiff must allege sufficient facts to show (1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right. *Zutz*, 601 F.3d at 848.

There are also multiple allegations surrounding Defendant Copling's harassment of Plaintiffs. *Id.* at ¶¶ 126, 131, 151, 156, 198, 200. In 2008, Plaintiff Pitts states she had to file an order of protection against Defendant Copling as the police refused to do anything because he was an alderman. *Id.* at ¶133. In 2009, Plaintiffs Pitts and Copling claim they obtained orders of protection against Defendant Copling. *Id.* at ¶¶ 198, 199.

Several averments in the Amended Complaint concern alleged false statements made by Defendant Copling. Plaintiffs state that they found several false statements filed by Defendant Copling about Plaintiffs at the Crawford County Prosecutor's office in 2008. *Id.* at ¶104. Additionally, Defendant Copling and his daughter allegedly wrote out false statements to get Plaintiffs Pitts and King arrested. *Id.* at ¶ 140. Furthermore, when Cuba Police Officer Green arrived at Plaintiff Copling's home to enforce an ex-parte order against her husband, William (Leroy) Copling, Defendant Copling allegedly made false reports to Officer Green regarding Plaintiffs Pitts and King, in an attempt to get them arrested. *Id.* at ¶ 145. Plaintiffs maintain that Officer Green attempted to verify the reports Defendant Copling made against them, and found each to be false. *Id.* at ¶ 157. Plaintiffs claim that they filed a complaint regarding this incident. *Id.* In Defendant Crow's Affidavit, Crow states that he is aware of a Cuba Officer, Greene, who *substantiated* a complaint made by Plaintiffs [ECF No. 188-1, ¶ 9].

In Plaintiffs' Supplement, they also allege that Defendant Copling forged his father's name (William (Leroy) Copling) on an ex-parte order of protection against Plaintiffs Pitts and King [ECF No. 204, ¶¶ 37-40]. Plaintiffs support this assertion with a copy of the order, as well as an incident report. The incident report states that Defendant Copling remarked that Lesley Hutson, of the Clerk's office, instructed him to sign the order; however, the report further adds

that Hutson denied the accuracy of Defendant Copling's statement [ECF Nos. 204, ¶ 44-45; 205, Exhibit 44].

Finally, Plaintiffs make repeated allegations of conspiracies involving Defendant Copling and Defendant Tim Bailey (of the CPD) [ECF No. 89, ¶¶ 54, 86, 116, 117, 128, 135, 238]. Plaintiffs allege a conspiracy to manufacture false charges against Plaintiffs, involving Defendant Copling, Defendant Bailey, and defendants Magel and Spratt,[22] which allegedly resulted in a false narcotics investigation of Plaintiffs and an illegal wiretapping of their phones. *Id.* at ¶¶ 223, 228, 325, 350(g).

### 1. __Counts I, II, III, XIX, and XX__

As noted above, Defendants argue that the claims against Defendant Copling fail as he was not acting under the *color of state law*, a required element under § 1983. However, Defendants reference acts by Defendant Copling, such as honking, driving past Plaintiffs, talking to them, and looking at them. While the Court would agree that these ordinary acts, described as harassment by Plaintiffs, may not be made possible due to his official position as an alderman, there are other actions in the Amended Complaint which could be construed as connected to his official duties. For example, Plaintiffs allege that they were not allowed to file complaints about Defendant Copling, and that the Council, on which he sat, refused to listen to Plaintiffs. Furthermore, Defendant Copling is alleged to have made and filed false reports against Plaintiffs, including reports made to Officer Green, and forged ex-parte orders against Plaintiffs Pitts and King. Defendant Crow's affidavit appears to confirm that Plaintiffs' allegation, involving Defendant Copling and Officer Green, was substantiated.

---

[22]Defendants Magel and Spratt are not Defendants in the instant Motion.

Additionally, there are Defendant Copling's own alleged statements regarding plans to falsely charge and arrest Plaintiffs. Plaintiffs offer Affidavits and exhibits in support of their assertions [ECF No. 205, Exhibits 44, 45, 74, 75, 77, 78]. Thus, this Court finds a genuine issue of material fact as to the required element, under § 1983, that Defendant Copling acted under the color of state law. Defendants further argue that qualified immunity protects Defendant Copling, even if he is found to be acting under color of state law. However, they offer no argument other than the conclusory statement that there were no constitutional violations based upon such acts as talking to, honking at, and driving past Plaintiffs. As such, Defendants have not addressed all of Plaintiffs' allegations, nor have they met their burden in establishing the affirmative defense.

It also appears that Plaintiffs assert a viable conspiracy claim against Defendant Copling under § 1983 (Counts I, II, and III). *See Askew,* 191 F.3d at 957 ("To prove a § 1983 conspiracy claim, plaintiff must show: (1) defendants conspired to deprive her of a constitutional right; (2) at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) the overt act injured her."). Plaintiffs have made numerous conspiracy allegations against Defendant Copling. Defendants argue as to all individual Defendants named in the instant Motion, that under § 1983, even if Plaintiffs have evidence that Defendants conspired, they still cannot prevail as no underlying constitutional violation occurred. As noted earlier, there are allegations of violations of Plaintiffs' constitutional rights as a result of the conspiracy, such as a retaliatory false narcotics investigation, illegal wiretapping and false reports. The Court, therefore, finds that a genuine issue of material fact exists as to the conspiracy claims under § 1983. Summary judgment will *not* be granted as to Counts I, II, and III.

Additionally, Plaintiffs assert Abuse of Process claims by Plaintiffs Pitts and King (XIX, XX) against Defendant Copling. As discussed above, these claims are understood to be under

state law, and involve an illegal and improper use of such process that is not warranted or authorized. The Court also finds a genuine issue of material fact as to these Counts based on Plaintiffs' many allegations, including false reports filed against Plaintiffs. *See Boyer*, 633 S.W.2d at 101 n.6 ("The phrase 'use of process' . . . refers to some willful, definite act not authorized by the process or aimed at an objective not legitimate in the proper employment of such process").

Thus, summary judgment will be denied as to Counts I, II, III, XIX, and XX.

### 2. <u>Counts XI, XII, XIV, XV, XVI, and XVII</u>

As discussed previously, the Court will grant summary judgment as to Plaintiffs' conspiracy claims against Defendant Copling under § 1985 and § 1986 (Counts XI, XII, XIV, XV, XVI, XVII). Although there are many references by Plaintiffs to Defendant Copling's participation in a conspiracy, Plaintiffs' civil conspiracy claims under 42 U.S.C. § 1985 and § 1986 are subject to summary judgment due to Plaintiffs' failure to allege any facts demonstrating a class-based animus or membership in a suspect class.

### C. **Defendant Bailey**

The following Counts have been asserted against Defendant Bailey:[23]

1.  Count I: Retaliation for exercising free speech rights (42 U.S.C. § 1983 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Sharon Pitts;
2.  Count II: Retaliation for exercising free speech rights (42 U.S.C. § 1983 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Lisa King;
3.  Count III: Retaliation for exercising free speech rights (42 U.S.C. § 1983 and 1st, 4th, and 14th Amendments), asserted by Plaintiff Marilyn Copling;
4.  Count V: False Arrest (42 U .S.C. § 1983 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Sharon Pitts;

---

[23]*See* note 4, *supra*.

5. Count VI: False Arrest (42 U .S.C. § 1983 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Lisa King;

6. Count VII: False Imprisonment (42 U .S.C. § 1983 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Sharon Pitts;

7. Count VIII: False Imprisonment (42 U .S.C. § 1983 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Lisa King;

8. Count X: Malicious Prosecution (42 U .S.C. § 1983 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Sharon Pitts;

9. Count XI: Conspiracy to interfere with civil rights (42 U.S.C. § 1985 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Sharon Pitts;

10. Count XII: Conspiracy to interfere with civil rights (42 U.S.C. § 1985 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Lisa King;

11. Count XIV: Conspiracy to interfere with civil rights (42 U.S.C. § 1985 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Marilyn Copling;

12. Count XV: Neglect to prevent conspiracy (42 U.S.C. § 1986 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Sharon Pitts;

13. Count XVI: Neglect to prevent conspiracy (42 U.S.C. § 1986 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Lisa King;

14. Count XVII: Neglect to prevent conspiracy (42 U.S.C. § 1986 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Marilyn Copling;

15. Count XIX: Abuse of process (42 U.S.C. § 1985 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Sharon Pitts;

16. Count XX: Abuse of process (42 U.S.C. § 1986 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Lisa King.

Defendants understand Plaintiffs' claims to be based on the March 7, 2008 arrests of Pitts and King for elder abuse, and the April 24, 2008 prosecution of Pitts for filing a false police report. Defendants argue that Defendant Bailey was not personally or individually involved in those arrests or prosecutions, and, consequently, Plaintiffs' allegations against him must be only in his supervisory capacity as City Marshall of Cuba. Defendants argue these claims are necessarily asserted against Defendant Bailey in his official capacity, and, therefore, asserted against the City of Cuba, and subject to analysis under *Monell*. As there is no liability for the City under *Monell*, Defendants assert that Defendant Bailey is also entitled to summary judgment.

Upon review of the Amended Complaint, the Court finds several allegations against Defendant Bailey. As noted before in the discussion of the claims against Defendant Copling, there are numerous assertions by Plaintiffs that Defendant Bailey was a member of a conspiracy with Defendants Copling, Magel and Spratt to manufacture false investigations, false statements, and false charges against Plaintiffs [ECF No. 89, ¶ 228]. *See also, e.g., Id.* at ¶¶ 54, 86, 116, 117, 128, 135, 223, 228, 238, 325, 350. Plaintiffs make allegations that the conspiracy produced a false narcotics investigation, illegal wiretaps, and other false reports. *Id.* at ¶¶ 230, 350(f). Plaintiffs further allege that the conspiracy existed in order to facilitate retaliation against Plaintiffs for filing complaints and speaking out at meetings. *Id.* at ¶¶ 325(k), 350(g).

Lastly, Plaintiffs allege that Bailey refused to let Cuba officers respond to Pitts' 911 calls. *Id.* at ¶¶ 96, 97. There are also assertions that Defendant Bailey committed "third degree assault" against Plaintiff Pitts. *Id.* at ¶¶ 111, 122, 124,125.

1. <u>**Counts V, VI, VII, VIII, and X**</u>

Defendants argue that all Counts against Defendant Bailey are asserted against him in his official capacity as he did not personally participate in the arrests or prosecution of Plaintiffs Pitts and King. Defendants then conclude that Plaintiffs' false arrest (Counts V, VI), false imprisonment (Counts VII, VIII), and malicious prosecution claims (Count X) must fail against Defendant Bailey in his *individual* capacity. This Court agrees. Plaintiffs have made no factual assertions regarding Defendant Bailey's personal involvement in Plaintiffs Pitts and King's arrests and Plaintiff Pitts' prosecution. Allegations against him in his supervisory role as Marshall fall under the doctrine of respondeat superior and warrant summary judgment under § 1983. *See Martin*, 780 F.2d at 1335 ("42 U.S.C. § 1983 does not permit suit based on a respondeat superior theory of liability"). Furthermore, any claims against him in his official

capacity are subject to *Monell*, and, as discussed above, are subject to summary judgment as Plaintiffs have not established a genuine issue of material fact as to the existence of a municipal policy or custom.

### 2. Counts XI, XII, XIV, XV, XVI, and XVII

As determined previously, the Court will grant summary judgment as to Plaintiffs' conspiracy claims under § 1985 and § 1986 (Counts XI, XII, XIV, XV, XVI, XVII). Although there are many allegations by Plaintiffs of Defendant Bailey's participation in a conspiracy, Plaintiffs' civil conspiracy claims under 42 U.S.C. § 1985 and § 1986 are subject to summary judgment due to Plaintiffs' failure to allege any facts demonstrating a class-based animus, or that they are members of a suspect class.

### 3. Counts I, II, III, XIX, and XX

Plaintiffs' Counts I, II, and III allege that Defendant Bailey acted in retaliation for Plaintiffs "exercising free speech rights" under 42 U.S.C. § 1983. In order "to state a claim for relief under § 1983, a plaintiff must allege sufficient facts to show (1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right. *Zutz*, 601 F.3d at 848. Although the Court agrees that there were no factual assertions establishing individual action by Defendant Bailey in the arrests or prosecution, there are other allegations in the Amended Complaint pertaining to him. Plaintiffs allege that Defendant Bailey refused to allow officers to respond to Plaintiff Pitts' 911 call regarding the domestic abuse of Plaintiff Copling. However, the Supreme Court has stated that a person generally has no due process right to be protected by the government against violence inflicted by a private actor, and therefore, the due process clause will not afford a basis for an action under § 1983 for injury due to such violence. *DeShaney v. Winnebago County*

*Dept. of Soc. Serv.*, 489 U.S. 189, 197, 109 S.Ct. 998 (1989). *See also Burton v. Richmond*, 276 F.3d 973, 978 (8th Cir. 2002).

Plaintiffs also assert that Defendant Bailey committed third-degree assault against Plaintiff Pitts. Plaintiffs do not give any factual detail as to how Defendant Bailey committed the alleged assault. Plaintiffs do not explain how this alleged assault violated their rights. As such, it remains a conclusory allegation. To establish it as a fact genuinely in dispute, Plaintiffs must provide citation to materials in the record to support the assertion, which they fail to do.

Plaintiffs Pitts and King additionally include Abuse of Process claims (Counts XIX and XX) against Defendant Bailey. As noted previously, to sustain an action for abuse of process, the facts must demonstrate an illegal and improper use of such process that is not warranted or authorized, an ulterior motive in exercising such process, and damages. *Wells,* 670 S.W.2d at 532. Here, as Defendants have previously argued, there are simply no facts asserted by Plaintiffs, identifying the individual actions of Defendant Bailey that would make a showing sufficient to establish a genuine issue of material fact as to these claims. Defendant Bailey is therefore entitled to summary judgment on Counts XIX and XX.

As noted above, Plaintiffs make numerous conspiracy assertions against Defendant Bailey. Plaintiffs allege false reports, wiretapping of Plaintiffs Pitts and King's phones, and a false narcotics investigation resulting from a conspiracy to retaliate against them. To prove a § 1983 conspiracy claim, plaintiff must show: (1) defendants conspired to deprive her of a constitutional right; (2) at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) the overt act injured her. *Askew,* 191 F.3d at 957. Plaintiffs are additionally required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim. *White,* 519 F.3d at 814. Furthermore,

> [T]he elements of a conspiracy are rarely established through means other than circumstantial evidence, and summary judgment is only warranted when "the evidence is so one-sided as to leave no room for any reasonable difference of opinion as to how the case should be decided." The court must be convinced that the evidence presented is insufficient to support any reasonable inference of a conspiracy.

*S.L. ex rel. Lenderman v. St. Louis Metro. Police Dept. Bd. of Com'rs*, No. 4:10CV2163CEJ, 2012 WL 3564030, at *8 (E.D. Mo. Aug. 17, 2012) (quoting *Westborough Mall, Inc. v. City of Cape Girardeau, Mo.,* 693 F.2d 733, 743 (8th Cir. 1982) (other citations omitted)). Here, the Court is not convinced that the evidence presented is *insufficient* to support the inference of a conspiracy. Defendants have not addressed the existence of a § 1983 conspiracy claim under Counts I, II, and III specifically against Defendant Bailey. They have not pointed to evidence in the record to establish the absence of a genuine issue of material fact as to Plaintiffs' allegations. As such, summary judgment will *not* be granted as to Plaintiffs' claims under Counts I, II, and III, pertaining to a conspiracy to violate Plaintiffs' rights under § 1983.

### D. Defendant Wilkerson

The following counts have been asserted against Defendant Wilkerson:[24]

1. Count I: Retaliation for exercising free speech rights (42 U.S.C. § 1983 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Sharon Pitts;
2. Count II: Retaliation for exercising free speech rights (42 U.S.C. § 1983 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Lisa King;
3. Count III: Retaliation for exercising free speech rights (42 U.S.C. § 1983 and 1st, 4th, and 14th Amendments), asserted by Plaintiff Marilyn Copling;
4. Count V: False Arrest (42 U .S.C. § 1983 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Sharon Pitts;
5. Count VII: False Imprisonment (42 U .S.C. § 1983 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Sharon Pitts;
6. Count XI: Conspiracy to interfere with civil rights (42 U.S.C. § 1985 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Sharon Pitts;

---

[24]See note 4, *supra*.

7.     Count XII: Conspiracy to interfere with civil rights (42 U.S.C. §
        1985 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by
        Plaintiff Lisa King;

8.     Count XIV: Conspiracy to interfere with civil rights (42 U.S.C. §
        1985 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by
        Plaintiff Marilyn Copling;

9.     Count XV: Neglect to prevent conspiracy (42 U.S.C. § 1986 and 1st, 4th,
        5th, 8th, 14th Amendments), asserted by Plaintiff Sharon Pitts;

10.    Count XVI: Neglect to prevent conspiracy (42 U.S.C. § 1986 and 1st, 4th,
        5th, 8th, 14th Amendments), asserted by Plaintiff Lisa King;

11.    Count XVII: Neglect to prevent conspiracy (42 U.S.C. § 1986 and
        1st, 4th, 5th, 8th,14th Amendments), asserted by Plaintiff Marilyn
        Copling;

12.    Count XIX: Abuse of process (42 U.S.C. § 1985 and 1st, 4th, 5th, 8th,
        14th Amendments), asserted by Plaintiff Sharon Pitts;

Defendants believe the basis of Plaintiffs' claims against Defendant Wilkerson to be 1)

his issuance of a citation to Plaintiff Pitts for trespassing at the Wagon Wheel Motel, 2) her

January 21, 2010 arrest by Defendant Wilkerson, and 3) Defendant Wilkerson's handcuffing of

Plaintiff Pitts during that arrest. Defendants identify the claims as false arrest, false

imprisonment, and excessive force, all under the Fourth Amendment. As there are no allegations

involving Plaintiffs King and Copling, summary judgment will be granted as to the claims by

them against Defendant Wilkerson (Counts II and III).

In the Amended Complaint, Plaintiffs do not identify Defendant Wilkerson as a member

of a conspiracy to deprive Plaintiffs of their constitutional rights. Without even a mere allegation

that Defendant Wilkerson conspired, Plaintiffs fail to make a sufficient showing as to the

required elements under § 1983 (Counts I, II, and III). *See Askew*, 191 F.3d at 957 ("To prove a §

1983 conspiracy claim, plaintiff must show: (1) defendants conspired to deprive her of a

constitutional right"). Thus, Plaintiffs' *conspiracy* claims under § 1983 as to Defendant

Wilkerson (under Counts I, II and III) are entitled to summary judgment. Additionally, as

discussed previously, the Court will also grant summary judgment as to Plaintiffs' conspiracy claims under § 1985 and § 1986 (Counts XI, XII, XIV, XV, XVI, XVII).

The remaining claims against Defendant Wilkerson involve alleged violations of Plaintiff Pitts' constitutional rights under Counts I, V, VII, and XIX.

### 1.     The Trespassing Citation

On October 7, 2008, Plaintiff Pitts was issued a citation by Defendant Wilkerson for trespassing at the Wagon Wheel Motel.  The events that transpired are in dispute between the Plaintiffs and the owners of the motel, the Armstrongs.  Plaintiffs' Amended Complaint stated the following: Plaintiff Pitts was followed into the lot of the motel by several police cars, which eventually left [ECF No. 89, ¶ 166];  A man came out of the motel, yelling Plaintiff Pitts' name, and then, along with his wife, blocked Pitts from getting into her vehicle, preventing her from leaving; The man and his wife yelled at Pitts and threatened her; The couple called the police, and then Plaintiff Pitts got in her vehicle and drove away; Plaintiff Pitts drove to the CPD to file a complaint; Plaintiff Pitts then drove to Plaintiff Copling's residence; Defendant Wilkerson arrived at Plaintiff Copling's residence, and announced he was giving Plaintiff Pitts a citation; and Defendant Wilkerson would not listen to Plaintiff Pitts' side of the story.  *Id.* at 89, ¶ 1.  In a sworn affidavit, Plaintiff Pitts restates the events of the Amended Complaint and identifies the couple as the owner's son, Ron Armstrong and his wife, Beverly [ECF No. 202-1, p. 45].

Defendants' Statement of Undisputed Material Facts presents a different version of the events as communicated to Defendant Wilkerson.  These facts were *not* controverted, so they are deemed admitted by the Plaintiffs.  As recounted in the Background section of this Order, the undisputed facts are as follows:

> On October 7, 2008, Officer Jason Wilkerson was dispatched to the Wagon Wheel Motel in Cuba, Missouri.  At the time, the Wagon Wheel Motel was

owned by the Armstrong family.  Upon arrival, Officer Wilkerson was informed by the owners of the Wagon Wheel Motel that Sharon Pitts had been there despite their prior warnings that she was not welcome on their property and that, this day, Pitts had refused to leave even when commanded to do so.  Wilkerson later received written statements from the Armstrongs setting forth their complaint against Sharon Pitts.  On the day of the incident, Officer Wilkerson interviewed Sharon Pitts, who claimed she had been assaulted by one of the Armstrongs. Officer Wilkerson issued Ms. Pitts a citation for trespassing based on the verbal statements he had taken from the Armstrongs.

Defendants argue that Plaintiff Pitts' claims fall under the Fourth Amendment.

Defendants maintain that the issuance of the citation was supported by probable cause, and under the Fourth Amendment, a seizure is reasonable if the police officer had probable cause. Also, they further assert that Defendant Wilkerson is entitled to qualified immunity, and, thus, Plaintiffs bear the burden of establishing that there is a lack of arguable probable cause.

Assuming Plaintiffs are arguing that the issuance of a citation is a seizure,[25] the Court finds that 1) Defendant Wilkerson had probable cause to issue it, and also, 2) he is entitled to qualified immunity as Plaintiffs did not establish a *lack of even arguable probable cause*.

Probable cause is to be determined upon the objective facts available to the officers at the time of the [seizure] if "'the totality of facts based on reasonably trustworthy information would justify a prudent person in believing the individual [seized] had committed ... an offense' at the time of the [seizure]." *Smithson v. Aldrich,* 235 F.3d 1058, 1062 (8th Cir. 2000) (quoting *Hannah v. City of Overland, Mo.,* 795 F.2d 1385, 1389 (8th Cir. 1986)).  The court must "assess

---

[25] A seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution.  *United States v. Jacobsen,* 466 U.S. 109, 124, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984).  A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission.  *Illinois v. Caballes*, 543 U.S. 405, 407-408, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005).  Note that Plaintiffs have not alleged facts that they were unreasonably detained while Defendant Wilkerson issued the citation.

probable cause from the viewpoint of a reasonably prudent police officer, acting in the circumstances of the particular case." *U. S. v. Crossland*, 301 F.3d 907, 911 (8th Cir. 2002) (internal citations omitted).

Under the doctrine of qualified immunity, however, the issue for the court "is not probable cause but arguable probable cause." *Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1999). To withstand a motion for summary judgment on qualified immunity grounds, a civil rights plaintiff must raise a genuine issue of fact as to whether the official would have known that his alleged conduct would have violated plaintiff's clearly established right. *Young v. Harrison*, 284 F.3d 863, 866-67 (8th Cir. 2002).

Here, the undisputed facts allege that Defendant Wilkerson was dispatched to the Wagon Wheel based on the Robinsons' call to the police. He was informed that Plaintiff Pitts had prior warnings that she was not welcome on their property [ECF No. 182-9]. He was told that Plaintiff Pitts had refused to leave. *Id*. In this case, the undisputed facts establish that Defendant Wilkerson had arguable probable cause to issue a citation for trespassing. He, at the very least, had an objectively reasonable belief that probable cause for an citation existed. Under Mo. Rev. Stat. § 569.140, "a person commits the crime of trespass in the first degree if he knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure or upon real property. A person does not commit the crime of trespass in the first degree by entering or remaining upon real property unless the real property is fenced or . . . as to which notice against trespass is given by: (1) Actual communication to the actor."

Under the doctrine of qualified immunity, Plaintiffs must establish a genuine issue of fact as to whether Defendant Wilkerson should have known that his conduct would violate Plaintiff Pitts' rights. This would require Plaintiffs to show that no officer could even arguably believe

she had such probable cause.  This is a high burden in light of the undisputed facts.  Although

Plaintiffs offer affidavits to support their version of the incident, what is relevant to the Fourth

Amendment and qualified immunity, is whether it was arguable that a reasonable officer could

have believed Plaintiff Pitts committed the offense of trespassing.  Here, the Court concludes that

a reasonable officer could have found probable cause, and thus, Plaintiffs have failed to meet

their burden.

## 2. January 21, 2010 Arrest of Plaintiff Pitts[26].

Plaintiff Pitts alleges that on January 21, 2010, her brother, Dennis Copling assaulted her

when she was trying to serve him with court documents [ECF No. 89, ¶¶ 210-211].  When

Defendant Wilkerson was dispatched to investigate Plaintiff Pitts' 911 call, he allegedly refused

to take written statements from Plaintiffs Pitts and King.  *Id.* at ¶¶ 211-212.  Defendant

Wilkerson later arrested Plaintiff Pitts without a warrant.  *Id.* at ¶¶ 213, 215.

A different version of the alleged events was reported to Defendant Wilkerson, as noted

in the Defendants' Statement of Undisputed Material Facts.  As relayed in the Background

section of this Order, the undisputed facts are as follows:

> On January 21, 2010, Officer Jason Wilkerson investigated a complaint by Sharon
> Pitts that she had been attacked by her brother, Dennis Copling. Officer Wilkerson
> went to Dennis Copling's place of business to interview him regarding the
> allegation, and while there, observed a tear in Copling's jacket.  Dennis Copling
> reported that Sharon Pitts had grabbed his collar, pulled him toward her, and, in
> the process, ripped his jacket.  Officer Wilkerson interviewed other employees
> who were present when the incident occurred and determined that the other

---

[26]Although Defendants do not specifically address Pitts' arrest as a First Amendment
retaliatory arrest, Defendants do note that a retaliatory prosecution claim requires plaintiff to
demonstrate a complete lack of probable cause [ECF No. 184-1, pp. 11-12].  The Court likewise
agrees that the presence of probable cause to arrest [plaintiff] defeats a First Amendment
retaliatory arrest claim.  *Galarnyk v. Fraser*, 687 F.3d 1070, 1076 (8th Cir. 2012).  Here, as
discussed in the following paragraphs, the Court finds that probable cause exists to support the
arrest, and therefore, no further analysis of this claim is necessary.

employees' stories matched Dennis Copling's account of the event. Based on the verbal witness statements, Officer Wilkerson determined he had probable cause to arrest Sharon Pitts.

Defendants argue that a seizure is reasonable under § 1983 if the police officer had probable cause. If the defense of qualified immunity is asserted, Defendants state that it is the Plaintiffs' burden to show a lack of even arguable probable cause. Defendants assert that a reasonable officer would have found probable cause to believe that Plaintiff Pitts had violated two Missouri State statutes criminalizing assault.[27]

A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause. *Fisher v. Wal–Mart Stores, Inc.,* 619 F.3d 811, 816 (8th Cir. 2010) (quotation and citation omitted). An officer has probable cause to make an arrest when "at the moment the arrest was made... the facts and circumstances within [the officer's] knowledge and of which [the officer] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *Kiser v. City of Huron*, 219 F.3d 814, 816 (8th Cir. 2000). If a case involves a question of probable cause for a law enforcement official's actions, the case should not proceed past the discovery stage if there is any reasonable basis to conclude that probable cause existed. *Walden v. Carmack*, 156 F.3d 861, 869-870 (8th Cir. 1998).

Under the doctrine of qualified immunity, the issue for the court "is not probable cause but arguable probable cause." *Kuehl*, 173 F.3d at 649. An arresting officer is still entitled to qualified immunity as long as the officer has an objectively reasonable belief that he had probable cause to make the arrest, even if that belief ultimately turns out to have been mistaken.

---

[27]*See* MO. REV. STAT. §§ 565.073 and 565.074 – Second and Third Degree Domestic Assault.

*Womack v. City of Bellefontaine Neighbors*, 193 F.3d 1028, 1031 (8th Cir. 1999). Although the defendant bears the burden of proof for this affirmative defense, the plaintiff must demonstrate that the law was clearly established. *Monroe*, 495 F.3d at 594.

In this case, the undisputed facts and circumstances provided Defendant Wilkerson with a reasonable basis to find probable cause to arrest Plaintiff Pitts for assault.[28] Defendant Wilkerson had reasonably trustworthy information from other employees present when the incident occurred. It is undisputed by Plaintiffs that when Defendant Wilkerson interviewed these employees, their stories matched Dennis Copling's account of the incident. It is also undisputed that Defendant Wilkerson saw a tear in Dennis Coplings' jacket, consistent with Plaintiff Pitts grabbing his collar and pulling him. A reasonable officer could have believed that Plaintiff Pitts committed assault, and summary judgment is warranted. Furthermore, on qualified immunity grounds, even if Defendant Wilkerson was mistaken that there was probable cause, the belief was objectively reasonable, and he is entitled to immunity. Plaintiffs have not shown a lack of probable cause, or that Plaintiff Pitts' right not to be arrested under the circumstances, was clearly established. So, Defendant Wilkerson is also entitled to summary judgment based on the affirmative defense of qualified immunity.

### 3. Excessive Force Claim – Handcuffing During the Arrest

During Plaintiff Pitts' January 21, 2010 arrest, Plaintiff Pitts avers that she told Defendant Wilkerson that she was going "to sue him for false arrest due to him having tunnel vision," and then he, according to Plaintiff Pitts, committed "police brutality" against her by securing his

---

[28]"A person commits the crime of domestic assault in the third degree if the act involves a family or household member . . . and: (1) The person attempts to cause or recklessly causes physical injury to such family or household member; or . . . (3) The person purposely places such family or household member in apprehension of immediate physical injury by any means; or . . . (5) The person knowingly causes physical contact with such family or household member knowing the other person will regard the contact as offensive. . ." Mo. Rev. Stat. § 565.074.

handcuffs as tight as he could causing her undue pain [ECF No. 89, ¶ 214]. Plaintiff Pitts maintains that she was in great pain from the handcuffs cutting into her hands, and she so informed Defendant Wilkerson. *Id.* at ¶ 217. She further alleges that she had to be treated at the Crawford County Sheriff Jail, and she showed the deep marks made by the handcuffs to the jailers and nurse. *Id.* at ¶¶ 218, 219. The jailers allegedly told Plaintiff Pitts that "she must be sensitive to cuffs." *Id.* at ¶ 219. The following day, Plaintiff Pitts claims she went to the hospital as she was still in pain from the handcuffs [ECF Nos. 202, ¶ 28; 89, ¶ 221].

Defendants, although accepting for purposes of summary judgment only, that Plaintiff Pitts found the handcuffs too tight, argues that the force is reasonable and permissible under the Fourth Amendment. Defendants point out that although Plaintiff Pitts claims to have visited the Sullivan hospital for treatment due to her alleged injury, she claims she does not have access to the records and is unable to produce them [ECF No. 189, p. 16 n.12]. Defendants argue that Defendant Wilkerson is entitled to qualified immunity for the application of the handcuffs as it did not violate a clearly established right.[29] Defendants state that Plaintiffs do not offer any Eighth Circuit precedent to show that, at the time of the incident, the law was clearly established that handcuffing provided a basis for an excessive force claim.

Given the state of the law in 2010, a reasonable officer could have believed that as long as she did not cause more than a *de minimus* injury to an arrestee, her actions would not run afoul of the Fourth Amendment. It is well-established that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

---

[29]Although the defendant bears the burden of proof for this affirmative defense, the plaintiff must demonstrate that the law was clearly established. *Monroe*, 495 F.3d at 594.

Generally, a plaintiff alleges sufficient injuries where there is some long-term or permanent injury, or at least objective medical evidence to support the plaintiff's claim of injury. *See, e.g., Cook v. City of Bella Villa,* 582 F.3d 850 (8th Cir. 2009) (finding the use of a Taser reasonable where the plaintiff did not allege any permanent neck or back problems); *Foster v. Metro. Airports Comm'n,* 914 F.2d 1076, 1082 (8th Cir. 1990) (finding that despite the plaintiff's complaints of nerve damage from being handcuffed, his claim of excessive force failed where he presented no medical records indicating he suffered any long-term injury); *Crumley v. City of St. Paul, Minn.,* 324 F.3d 1003, 1008 (8th Cir. 2003) (finding no excessive force where the plaintiff, who alleged the handcuffs were secured so tightly that they made her hands bleed, did not "present any medical records indicating she suffered from any long-term or permanent physical injury"); *Andrews v. Fuoss,* 417 F.3d 813, 818 (8th Cir. 2005) (finding injuries were *de minimis* where they were at most very minor injuries, likely nothing more than the temporary and slight aggravation of pre-existing conditions); *Wertish v. Krueger,* 433 F.3d 1062, 1067 (8th Cir. 2006) (holding that "relatively minor scrapes and bruises" and a "less-than-permanent aggravation of a prior shoulder condition" are *de minimis* injuries).

An examination of whether the Plaintiff suffered more than a *de minimus* injury, however, is not the end of the inquiry, however, in the Eighth Circuit. The Court must also consider "whether *the force used* to effect a particular seizure is reasonable." *Chambers v. Pennycook* , 641 F.3d 898, 906 (8th Cir. 2011) (internal citations and quotations omitted). A *de minimis use of force* is insufficient to support a claim, and it may well be that most plaintiffs showing only *de minimis* injury can show only a corresponding *de minimis* use of force. *Id.* (internal citations omitted). The degree of injury is certainly relevant insofar as it tends to show the amount and type of force used. *Id.* (internal citations omitted).

The record contains no evidence that Plaintiff Pitts suffered more than *de minimus* short-term injury, such as pain and swelling.  Plaintiff presents no evidence of medical records to support any injury.  It is certainly possible that an excessive application of force could cause a *de minimus* injury.  Here, Plaintiffs claim that Defendant Wilkerson secured the cuffs as tight as he could.  However, handcuffing involves restraint, and naturally entails some discomfort. There are no facts alleged to indicate unusual, serious, or lingering injury from wearing the cuffs.  Based on the totality of circumstances, the Court does not find that the facts as alleged create a genuine issue as to the use of an excessive amount of force.  Furthermore, although Plaintiffs list a few cases to support their claim, the case law referenced is not binding precedent.[30]  Concerning qualified immunity, Plaintiffs do not meet their burden to show the handcuffing at issue violated a clearly established constitutional right.  Without evidence that the force used here or the resulting injury was greater than *de minimus*, given the prevailing law at the time of the arrest, Defendant Wilkerson is entitled to qualified immunity.  This Court finds Defendant Wilkerson is entitled to summary judgment on Plaintiffs Pitts' claim that he violated her right to be free from excessive force.

Finally, Plaintiffs Pitts alleges an abuse of process claim (Count XIX) against Defendant Wilkerson.  To sustain an action for abuse of process, a plaintiff must present sufficient evidence to support the allegations in his petition stating a cause of action for abuse of process.  *Wells*, 670 S.W.2d at 533.  The test employed is whether process had been used to accomplish some unlawful end or to compel the opposite party to do some collateral thing which he could not be

---

[30]The cases are from the Ninth Circuit, Sixth Circuit and district court of Georgia. Notably, Plaintiffs completely fail to address existing precedent in the Eighth Circuit, which of course, is most relevant to a determination of  "established law" and the objective reasonableness of an officer's actions taking place within the Circuit.

compelled to do legally.  *Id.* (citing *Owen,* 642 S.W.2d at 414[8, 9]).  Here, as the Court has

found probable cause as to the citation and arrest, there is no misuse of process by Defendant

Wilkerson.  Even if Plaintiff Pitts' citation and warrantless arrest could be construed as a misuse

of process, Plaintiffs fail to establish a genuine issue as to how it was aimed at an 1) unlawful

end or 2) compelling Plaintiffs to do a collateral thing they can't be compelled to do legally.  *See*

*Owen*, 642 S.W.2d at 414 (citing *White v. Scarritt,* 341 Mo. 1004, 1012, 111 S.W.2d 18, 22

(1937)) (the privilege of process may not be used for an unlawful purpose such as using the

litigation to extort money or anything of value from another).  Plaintiffs fail to raise a genuine

issue of material fact as to the abuse of process claim under Count XIX against Defendant

Wilkerson.

Therefore, Defendant Wilkerson is entitled to summary judgment on the remaining

claims by Plaintiff Pitts under Counts I, V, VII, and XIX.

**E.      Defendant Shelton**

The following Counts have been asserted against Defendant Shelton:[31]

1.      Count I: Retaliation for exercising free speech rights (42 U.S.C. §
        1983 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by
        Plaintiff Sharon Pitts;
2.      Count II: Retaliation for exercising free speech rights (42 U.S.C. § 1983
        and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Lisa King;
3.      Count III: Retaliation for exercising free speech rights (42 U.S.C. § 1983
        and 1st, 4th, and 14th Amendments), asserted by Plaintiff Marilyn
        Copling;
4.      Count V: False Arrest (42 U .S.C. § 1983 and 1st, 4th, 5th, 8th,
        14th Amendments), asserted by Plaintiff Sharon Pitts;
5.      Count VI: False Arrest (42 U .S.C. § 1983 and 1st, 4th, 5th, 8th,
        14th Amendments), asserted by Plaintiff Lisa King;
6.      Count VII: False Imprisonment (42 U .S.C. § 1983 and 1st, 4th,
        5th, 8th, 14th Amendments), asserted by Plaintiff Sharon Pitts;
7.      Count VIII: False Imprisonment(42 U .S.C. § 1983 and 1st, 4th,

---

[31]*See* note 4, *supra*.

5th, 8th, 14th Amendments), asserted by Plaintiff Lisa King;

8.     Count X: Malicious Prosecution (42 U .S.C. § 1983 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Sharon Pitts;

9.     Count XI: Conspiracy to interfere with civil rights (42 U.S.C. § 1985 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Sharon Pitts;

10.     Count XII: Conspiracy to interfere with civil rights (42 U.S.C. § 1985 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Lisa King;

11.     Count XIV: Conspiracy to interfere with civil rights (42 U.S.C. § 1985 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Marilyn Copling;

12.     Count XV: Neglect to prevent conspiracy (42 U.S.C. § 1986 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Sharon Pitts;

13.     Count XVI: Neglect to prevent conspiracy (42 U.S.C. § 1986 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Lisa King;

14.     Count XVII: Neglect to prevent conspiracy (42 U.S.C. § 1986 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Marilyn Copling;

15.     Count XIX: Abuse of process (42 U.S.C. § 1985 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Sharon Pitts;

16.     Count XX: Abuse of process (42 U.S.C. § 1986 and 1st, 4th, 5th, 8th, 14th Amendments), asserted by Plaintiff Lisa King.

Defendants find the basis of Plaintiffs' claims against Defendant Shelton to be 1) his completion of a probable cause statement concerning Plaintiff Pitts, pursuant to his investigation of the February 28, 2008 incident at the Copling residence, 2) his completion of a probable cause statement concerning Plaintiff King, pursuant to his investigation of the February 28, 2008 incident at the Copling residence, and 3) Defendant Shelton's completion of a probable cause statement concerning Plaintiff Pitts, pursuant to his investigation of Plaintiff Pitts for filing a false police report. Defendants identify the claims as false arrest and false imprisonment as to Plaintiff King, and false arrest, false imprisonment, and malicious prosecution as to Plaintiff Pitts. As there are no allegations involving Plaintiff Copling, summary judgment will be granted as to claims by her (Count III).

Furthermore, in the Amended Complaint, Plaintiffs do not name Defendant Shelton as a member of a conspiracy to deprive Plaintiffs of their constitutional rights. Without an allegation

that Defendant Shelton conspired, Plaintiffs' claims will fail to meet the required elements under § 1983 (Counts I, II, and III).  *See e.g., Askew*, 191 F.3d at 957 ("To prove a § 1983 conspiracy claim, plaintiff must show: (1) defendants conspired to deprive her of a constitutional right").  Thus, Plaintiffs *conspiracy* claims under § 1983 as to Defendant Shelton (Counts I, II and III) are entitled to summary judgment.  Additionally, as discussed previously, the Court will also grant summary judgment as to Plaintiffs' conspiracy claims under § 1985 and § 1986 (Counts XI, XII, XIV, XV, XVI, XVII).

The remaining claims against Defendant Shelton involve alleged violations of Plaintiff Pitts and King's constitutional rights under Counts I, II, V, VI,VII, VIII, X, XIX and XX.

### 1.        Probable Cause Statements - Elder Abuse Charges

According to the Amended Complaint, on February 28, 2008, Plaintiffs Pitts and King were assaulted by their father at his home [ECF No. 89, ¶ 37].  Their father left, and went to Defendant Copling's residence.  *Id.* at ¶ 38.  Defendant Shelton responded to separate 911 calls from Defendant Copling's residence and Plaintiff Copling's residence.  *Id.* at ¶¶ 39, 40, 41, 43.  According to Plaintiffs, when Defendant Shelton came to Plaintiff Copling's home, he viewed a video of the incident, listened to an audio recording, heard their account of what transpired, and left statements for them to fill out.  *Id.* at ¶¶ 44, 48.  Plaintiffs allege that Defendant Shelton did not look for any signs or marks of assault on Plaintiffs Pitts and King, "because of his decision that they were guilty before he even talked to Plaintiffs" [ECF No. 204, ¶ 31].  Plaintiffs maintain that Defendant Shelton subsequently filed a probable cause statement and a police narrative on March 4, 2008, with the Crawford County Prosecutor's office [ECF No. 89, ¶ 52].  Plaintiffs allege that the narrative does not mention Plaintiff Pitts as a suspect [ECF No. 202, ¶ 12].  Plaintiffs also aver that the Prosecutor's office did not receive Plaintiff Pitts and King's voluntary

statements about the incident, along with Defendant Shelton's report and probable cause statements [ECF No. 89, ¶ 103]. Plaintiffs claim that Defendant Shelton told them he had sent the statements to the prosecutor, but Plaintiffs maintain he withheld them, resulting in Plaintiffs Pitts and King being falsely accused and arrested. *Id.* at ¶¶ 103-106. Plaintiffs claim that they dropped completed statements off at the police station on the day following the incident. *Id.* at ¶ 50.

A different version of the alleged events was reported by Defendant Shelton, as noted in the Defendants' Statement of Undisputed Material Facts. As recounted in the Background section of this Order, the undisputed facts, deemed admitted by the Plaintiffs, are as follows:

> On February 28, 2008, Officer Doug Shelton took a statement from Leroy Copling in which Copling claimed to have been physically assaulted by Lisa King and verbally abused by both King and Sharon Pitts. Officer Doug Shelton observed red marks on Leroy Copling's neck which Shelton believed were consistent with Copling's claim. Officer Shelton also interviewed Sharon Pitts, Lisa King, and Marilyn Copling about the incident. Lisa King claimed to have a video of the incident on her cellular phone, but refused to turn the phone over to Officer Shelton. Marilyn Copling claimed to have a recording of the incident, which Officer Shelton listened to at the scene. Officer Shelton ultimately filed probable cause statements against Sharon Pitts and Lisa King for the crime of Elder Abuse. Warrants were issued for Sharon Pitts' and Lisa King's arrests for Elder Abuse.

Defendant Shelton offers an affidavit which supports the above version of the events on February 28, 2008. Defendant Shelton avers in the affidavit that, although Plaintiff King maintained her father choked her, he (Shelton) did not observe any marks consistent with her allegations [ECF No. 188-2, ¶ 9]. Similarly, Defendant Shelton claims that although Plaintiff Pitts stated her father hit her in the face with a phone, he did not see any marks consistent with her story. *Id.* at ¶ 10. He also maintains that all he heard on the audio was yelling, cursing, and a female singing happy birthday to Leroy Copling. *Id.* at ¶ 8. Additionally, Defendant Shelton claims that all he observed on the video (from Plaintiff King's phone) was Leroy Copling

flipping off the camera. *Id.* at ¶ 11. Although Plaintiffs allege that Defendant Shelton withheld their statements from the Prosecutor, Defendant Shelton explains in his affidavit that the Plaintiffs did not deliver *original* statements to the station, and he left a message with Plaintiff Pitts' husband Jerry, that he needed the originals, but never received them. Furthermore, Defendant Shelton collected as part of his investigation, written statements from a number of family members, attesting to the long-running abuse Plaintiffs Pitts and King have directed at Leroy Copling, their father [ECF No. 182-11, Exhibit 17].

Plaintiffs appear to base their § 1983 claims for false arrest (of Plaintiffs Pitts and King), false imprisonment (of Plaintiffs Pitts and King), and malicious prosecution (of Plaintiff Pitts) on the Defendant Shelton's omission of their statements from the probable cause affidavits [ECF Nos. 182-7]. Plaintiffs allege that the probable cause statements prepared by Defendant Shelton are one-sided, as they do not include Plaintiffs' version of the incident as reflected in their prepared statements, which they allegedly delivered to the police station. Plaintiffs argue that the one-sided probable cause statements led to the erroneous issuance of warrants and their arrests.

Defendants argue that it is immaterial that Defendant Shelton did not include a detailed account of Plaintiffs' side of the story in his probable cause affidavit. According to Defendants, the probable cause statements do give notice that there are two versions of the events. Defendants propose that even if Defendant Shelton omitted information, there is no basis for liability unless probable cause would *not* have existed had the omitted facts been included. Defendants further argue that the Plaintiff must show the omissions were made deliberately or recklessly.

In the context of a search warrant, the Eighth Circuit has determined that "A search warrant may be invalidated because of omitted facts if (1) the police omitted facts with the intent

to make, or in reckless disregard of whether they thereby made, the affidavit misleading and (2) the affidavit, if supplemented by the omitted information would not have been sufficient to support a finding of probable cause." *U.S. v. Alexander*, 574 F.3d 484, 488 (8th Cir. 2009) (internal citation omitted). So, the question here, is whether the inclusion of Plaintiffs' version of the February 28, 2008 incident on the probable cause statement would still permit a reasonable officer to determine that there was probable cause to believe that Plaintiffs Pitts and King committed the offense of elder abuse.[32] The court must assess probable cause from the viewpoint of a reasonably prudent police officer acting in the circumstances of the particular case. *U.S. v. Crossland*, 301 F.3d 907, 911 (8th Cir. 2002).

Here, even if Plaintiffs could somehow establish that Defendant Shelton was reckless in omitting their version of events, a reasonable officer could determine, if Plaintiffs' omitted information had been included, that there was still probable cause to find that Plaintiffs Pitts and King committed elder abuse. First of all, it is undisputed that there were marks on Leroy Coplings' neck consistent with his story. Although Plaintiffs allege that Defendant Shelton did not look to see if Plaintiff Pitts and King had marks on them, it is unlikely that he would have missed marks, which would be openly visible on Plaintiff's face or neck, when responding to the call. Furthermore, Defendant Shelton collected statements from family members attesting to abuse by Plaintiffs Pitts and King, further corroboration of Leroy Copling's account. A reasonable officer could have determined probable cause existed as to the elder abuse charges,

---

[32]In Missouri, Mo. Rev. Stat.§565.184, codifies the crimes of knowingly causing of attempting to cause physical contact knowing the other person will regard the contact as harmful or provocative; purposely engaging in conduct involving more than one incident that causes grave emotional distress; purposely or knowingly placing an elder adult in apprehension of immediate physical injury; intentionally failing to provide care, goods or services to an elder adult; or knowingly acting or failing to act in a manner which results in grave risk to the life, body or health of an elder adult.

even if fully apprised of Plaintiffs' allegations.

Plaintiffs assert separate claims under Counts V, VI, VII, VIII, and X for false arrest, false imprisonment, and malicious prosecution (as to Plaintiff Pitts alone).  As far as these claims relate to Defendant Shelton's preparation of the probable cause affidavits, a determination that probable cause would have existed to arrest Plaintiffs Pitts and King for elder abuse, even taking into account Plaintiffs' version of the events, entitles Defendants to summary judgment on these claims.

Assuming false imprisonment is cognizable under § 1983, to state such a claim, "a plaintiff must demonstrate the elements of a common law claim and show that his Fourth Amendment right to be free from unreasonable search and seizure has been violated."  *Cox v. City of Maryland Heights*, No. 4:09CV852DDN, 2011 WL 4055780, at * 13 (E.D. Mo. Sept. 13, 2011) (citing *Hinton v. Franck,* 242 F.3d 388, No. 00-1142, 2000 WL 1846195, at *4 (10th Cir. Dec. 18, 2000) (unpublished table opinion)).  However, probable cause is a complete defense to a false imprisonment claim, whether brought under § 1983 or under Missouri law.  *Cox*, 2011 WL 4055780, at * 13 (citing *Hinton,* 2000 WL 1846195, at *3).  Furthermore, a false arrest claim under 42 U.S.C. § 1983 "fails as a matter of law where the officer had probable cause to make the arrest."  *Kurtz v. City of Shrewsbury,* 245 F.3d 753, 758 (8th Cir. 2001).  In light of the determination that probable cause exists as to the probable cause affidavits and the arrests, there is no genuine issue of material fact to support Plaintiffs' claims.

As to Plaintiff Pitts' malicious prosecution claim, "[i]t is well established in this circuit that an action for malicious prosecution by itself is not punishable under § 1983 because it does not allege a constitutional injury."  *Sanders v. Sears, Roebuck & Co.,* 984 F.2d 972, 977 (8th Cir. 1993); *see also Gordon v. Hansen,* 168 F.3d 1109, 1114 (8th Cir. 1999).  Malicious prosecution

can form the basis of a § 1983 suit only if defendant's conduct also infringes some provision of the Constitution or federal law. *Gunderson v. Schlueter,* 904 F.2d 407, 409 (8th Cir. 1990). "Among the elements of a cause of action of malicious prosecution is that defendant initiated (or continued) the prosecution without probable cause." *Rustici v. Weidemeyer,* 673 S.W.2d 762, 767 (Mo. banc 1994). Here, as discussed above, the Court has determined that the challenged part of Defendant Shelton's role in the prosecution, his preparation of the probable cause statements, did *not lack* probable cause, even taking into account the alleged omissions. Even if the Court reads Plaintiffs' malicious prosecution claim liberally to allege a procedural due process violation, the Court does not find that Plaintiffs were denied any procedure due under the Constitution.[33] As such, Defendants are entitled to summary judgment on the malicious prosecution claim (Count X) relating to Defendant Shelton's investigation and preparation of the probable cause statement leading to Plaintiff Pitts' arrest on elder abuse charges.

### 2. Probable Cause Statement - False Police Report

According to the Amended Complaint, Plaintiff Pitts called 911, and requested that an officer speak with Leroy Copling to find out the names of three women she claimed were threatening bodily harm to Plaintiffs [ECF No. 89, ¶ 136].[34] Defendant Shelton was dispatched to the Copling residence. *Id.* at ¶ 137. Plaintiff Pitts alleged that Defendant Shelton refused to talk to Leroy Copling when he got there,[35] questioning Plaintiff Copling instead [ECF No. 182-

---

[33]The general test of whether executive action denying a liberty interest is egregious enough to violate due process is whether it shocks the conscience. *Folsom v. Morgan County, Mo.*, No. 2:10CV04128NKL, 2011 WL 2417009, at *6.

[34]The transcript of the 911 call reveals that Plaintiff Pitts only mentioned *one lady* who allegedly told her dad she was going to stomp Plaintiffs [ECF No. 182-5, ll. 6-8].

[35]In the transcript of the proceedings related to the charge against Plaintiff Pitts, Defendant Shelton explains that he did not interview Leroy Copling as he saw him in his vehicle on Route 66, not at his residence, near the time of the reported incident [ECF No. 202-1, Exhibit

12, Exhibit 18]. Plaintiffs allege that Defendant Shelton then manufactured false charges of "Filing a False Report," against Plaintiff Pitts [ECF No. 89, ¶ 142]. Plaintiffs then state that Plaintiff Pitts had to go to court and defend herself against the false charges, at which time the Crawford County Assistant Prosecutor insisted on Nolle Prosequi (dismissal). *Id.* at ¶155. Plaintiffs allege that Defendant Shelton lied in his probable cause statement and police narrative, as well as committing perjury on the stand. *Id.* Plaintiffs claim they subsequently filed complaints regarding Defendant Shelton at the Cuba City Council meetings. *Id.* at ¶¶ 160, 163.

Plaintiffs' main issue seems to be that the transcript of the 911 call [ECF Nos. 182-5] by Pitts only reveals that she wanted an officer to inquire about the identity of the female Leroy Copling said would stomp Plaintiffs, not that there was a suspect at the residence threatening her parents. This appears to be the source of her allegations that Defendant Shelton lied in his reports and committed perjury.

Defendant Shelton recounts a different understanding of the content of the 911 call. The following facts are drawn from Defendants' Statement of Undisputed Material Facts and are deemed admitted by Plaintiffs:

> On April 24, 2008, Officer Doug Shelton received a call from dispatch alerting him to a possible disturbance at the residence of Marilyn and Leroy Copling. Sharon Pitts had called dispatch asking for an officer to investigate threats. The dispatcher told Officer Shelton, "The third party report states that there's a female threatening her father and mother and would like an officer to respond." Officer Shelton responded to the Copling residence and, once there, talked with Marilyn Copling. Marilyn Copling told Officer Shelton there was no one there threatening her and there had not been anyone there all day. Officer Shelton determined he had probable cause to believe Sharon Pitts had committed the crime of Filing a False Police Report, and so filled out a Probable Cause statement to that effect.

> Defendant Shelton's sworn affidavit [ECF No. 188-2] as well as the probable cause

20, p. 14].

statement he completed [ECF No. 182-6] both indicate that the 911 dispatcher told Defendant Shelton that there was a female threatening the Coplings. Furthermore, Defendants provided a transcript of the 911dispatcher's conversation with Defendant Shelton, confirming that Defendant Shelton was told by the 911 operator, based on information from a third-party (Plaintiff Pitts), that there was a person threatening the Coplings at their residence [ECF No. 182-5, p. 3]. Based on the information relayed by the 911 operator, and Plaintiff Copling's response that there had been no one at her residence threatening them that day, Defendant Shelton found probable cause that Plaintiff Pitts had committed the offense of filing a false report [ECF No. 188-2]. Furthermore, it is an *undisputed* fact that "Officer Shelton determined he had probable cause to believe Sharon Pitts had committed the crime of Filing a False Police Report" [ECF No. 180-1, ¶ 25].

Plaintiffs appear to allege a malicious prosecution claim, or retaliatory prosecution claim for the exercise of First Amendment rights, against Defendant Shelton based on this incident. The claim rests on an alleged falsity in his probable cause statement, specifically that Plaintiff Pitts reported to 911 that there was a female at her parents' residence making threats. As shown by the Plaintiffs, the content of the 911 call reveals that Plaintiff Pitts wanted the police to determine the identity of this person from her father. However, Defendant Shelton based his probable cause statement on the information the 911 operator conveyed to him, which was not a request to interrogate Leroy Copling about an unnamed, and absent person, making threats, but to respond to a female threatening Plaintiff Pitts' parents.

As discussed above, a malicious prosecution can form the basis of a § 1983 suit only if defendant's conduct also infringes some provision of the Constitution or federal law. *Gunderson,* 904 F.2d at 409. Under Missouri law, a malicious prosecution claim arises upon a showing that a

defendant initiated or continued a prosecution without probable cause. *King v. Ryals,* 981 S.W.2d 151, 154 (Mo. Ct. App. 1998). Here, the question turns on whether Plaintiff Pitts was prosecuted based on a probable cause affidavit that lacked probable cause. Plaintiffs argue that the probable cause statement was based on false information. However, "[a]n officer has probable cause . . . when 'at the moment the arrest was made... the facts and circumstances within [the officer's] knowledge and of which [the officer] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" *Beck*, 379 U.S. at 91. Furthermore, "[a]s probable cause is determined at the moment the arrest was made, any later[-]developed facts are irrelevant to the probable cause analysis for an arrest." *Fisher,* 619 F.3d at 816. Although, this analysis is in the context of an arrest, the rationale would seem to be similarly applicable here. Defendant Shelton, relying on the reasonably trustworthy information provided by 911, could have concluded Plaintiff Pitts made a false report when Plaintiff Copling told him no one had been at the residence all day, disturbing or threatening them.[36]

Defendants also address the possibility that Plaintiffs are claiming malicious prosecution in the context of a substantive due process claim for the reckless failure to investigate. The Eighth Circuit has explained, that to establish a violation of due process based on a failure to investigate, a plaintiff must show that the officers "intentionally or recklessly failed to investigate, thereby shocking the conscience." *Folsom*, 2011 WL 2417009, at *6 (citing *Akins v. Epperly,* 588 F.3d 1178, 1184 (8th Cir. 2009) (quoting *Amrine v. Brooks,* 522 F.3d 823, 834 (8th Cir. 2008)). A review of Eighth Circuit cases has indicated that the following circumstances

---

[36]As noted previously in this Order, a retaliatory prosecution claim for the exercise of First Amendment rights requires Plaintiffs to establish a lack of probable cause. Therefore, Plaintiffs' claim also fails under this theory.

suggest reckless or intentional failure to investigate which shocks the conscience: "(1) evidence that the state actor attempted to coerce or threaten the defendant, (2) evidence that investigators purposefully ignored evidence suggesting the defendant's innocence, (3) evidence of systematic pressure to implicate the defendant in the face of contrary evidence." *Id.* (internal citations omitted). Here, although the probable cause statement does appear to be based upon an misstatement by the 911 dispatcher, it does not rise to the level of the circumstances set out above, or shock the conscience. Plaintiffs fail to establish a genuine issue of material fact as to the malicious prosecution (Count X) of Plaintiff Pitts.

Finally, Plaintiffs Pitts and King also allege abuse of process claims by Plaintiffs Pitts and King (Counts XIX and XX) against Defendant Shelton. To sustain an action for abuse of process, a plaintiff must present sufficient evidence to support the allegations in his petition stating a cause of action for abuse of process. *Wells*, 670 S.W.2d at 533 (Mo. App. E.D. 1984). The test employed is whether process had been used to accomplish some unlawful end or to compel the opposite party to do some collateral thing which he could not be compelled to do legally. *Id.* (citing *Owen,* 642 S.W.2d at 414[8, 9]. The essence of abuse of process is not the commencement of an action without justification but is the misuse of process for an end other than that which it was designed to accomplish; no liability is incurred where the defendant has done nothing more than pursue the lawsuit to its authorized conclusion regardless of how evil his motive may be. *Id.* Here, Plaintiffs allege that the probable cause statements contained omitted facts and a false statement (as to Plaintiff Pitts' alleged false report). Even if this could somehow be construed as a misuse of process, Plaintiffs fail to establish a genuine issue as to how it was aimed at an 1) unlawful end or 2) compelling Plaintiffs to do a collateral thing they can't be compelled to do legally. *See Owen*, 642 S.W.2d at 414 (citing *White,* 341 Mo. at 1012) (the

privilege of process may not be used for an unlawful purpose such as using the litigation to extort money or anything of value from another). Plaintiffs fail to raise a genuine issue of material fact as to the abuse of process claims under Counts XIX and XX against Defendant Shelton.

Therefore, all Counts alleged against Defendant Shelton will be subject to summary judgment, and Defendant Shelton will be terminated as a party to the lawsuit.

## VIII.   SUMMARY AND CONCLUSION

Upon entering this Order, the following Counts will be dismissed with prejudice from this case: Count I as to Defendants Bayliss, Murdock, Grant, Halbert, Howard, Killeen, Robinson, Crow, Wilkerson, and Shelton; Count II as to Defendants Bayliss, Murdock, Grant, Halbert, Howard, Killeen, Robinson, Crow, Wilkerson, and Shelton; Count III as to Defendants Bayliss, Murdock, Grant, Halbert, Howard, Killeen, Robinson, Crow, Wilkerson, and Shelton; Count V as to Defendants Wilkerson, Shelton, and Bailey; Count VI as to Defendants Crow, Shelton, and Bailey; Count VII as to Defendants Wilkerson, Shelton, and Bailey; Count VIII as to Defendants Shelton and Bailey; Count X as to Defendants Shelton and Bailey; Counts XI, XII, XIV, XV, XVI, XVII, as to Defendants Bayliss, Murdock, Grant, Halbert, Howard, Killeen, Robinson, Crow, Copling, Bailey, Wilkerson, and Shelton; Count XIX as to Defendants Shelton, Wilkerson, and Bailey; Count XX as to Crow, Shelton and Bailey; Count XXI as to the City of Cuba Police Department; Count XXIVas to the City of Cuba. The following Defendants are terminated as there are no longer any Counts pending against them: City of Cuba Police Department, City of Cuba, Ralph Bayliss, Les Murdock, Maurice Grant, Harold Halbert, Faye Howard, Kenny Killeen, Kent Robinson, Paul Crow, Doug Shelton, and Jason Wilkerson.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants, City of Cuba, City of Cuba Police

Department, Ralph Bayliss, Les Murdock, Maurice Grant, Harold Halbert, Faye Howard, Kenny Killeen, Kevin Copling, Kent Robinson, Paul Crow, Doug Shelton, Jason Wilkerson, and Tim Bailey's Motion for Summary Judgment [ECF No. 180] is **GRANTED in part**, and **DENIED in part**. Count I is **DISMISSED, with prejudice,** as to Defendants Bayliss, Murdock, Grant, Halbert, Howard, Killeen, Robinson, Crow, Wilkerson, and Shelton. Count II is **DISMISSED, with prejudice**, as to Defendants Bayliss, Murdock, Grant, Halbert, Howard, Killeen, Robinson, Crow, Wilkerson, and Shelton. Count III is **DISMISSED, with prejudice**, as to Defendants Bayliss, Murdock, Grant, Halbert, Howard, Killeen, Robinson, Crow, Wilkerson, and Shelton. Counts V, VI, VII, VIII, X, XI, XII, XIV, XV, XVI, XVII, XXI, XXIV are **DISMISSED, with prejudice.** Count XIX is **DISMISSED, with prejudice**, as to Defendants Shelton, Wilkerson, and Bailey. Count XX is **DISMISSED, with prejudice**, as to Defendants Crow, Shelton, and Bailey. The only Counts remaining for trial are the following: Counts I, II, III, XIX, and XX against Defendant Copling in his individual capacity; and Counts I, II, and III, pertaining to a civil conspiracy under 42 U.S.C. § 1983, against Defendant Bailey in his individual capacity.

Dated this __19th__ day of December, 2012.

_____
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE